90   420
39a  126
90   420
167  401

## HENRY PETILLON

*v.*

### JESSE HIPPLE.

1. WAGER—*on result of an election, void.*   A bet on the result of an election, and the agreement growing out of the same, for the stakeholder to pay the moneys deposited with him to the winner, is illegal and void.

2. CHANCERY JURISDICTION—*to set aside contracts on wager.*   Courts of chancery will assume jurisdiction to restrain the enforcement of unexecuted contracts founded on wagers or bets prohibited by law.

3. CHANCERY—*bill to avoid wager on election.*   A bill to restrain a stake-holder from paying over money deposited with him by the complainant, on a bet on the result of an election, and to compel its return, should, in clear and unequivocal terms, show that the stake is still in the hands of the defendant, and that he refuses to return the same, after demand.

APPEAL from the Circuit Court of Cook county ; the Hon. W. W. FARWELL, Judge, presiding.

Mr. OMAR BUSHNELL, for the appellant.

Mr. GEORGE A. GIBBS, and Mr. RUSHTON M. DORMAN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that appellant, in the month of October, 1876, made a bet of $50 on the result of the presidential election, which occurred on the 7th day of the following November, with one Campbell.   Subsequently, in the same month, he made a similar bet of $100 on the result of the same election,

with the same person. Complainant and Campbell each placed in the hands of appellee $150 as a stake. Soon after the election complainant became dissatisfied with the manner in which it had been conducted, and called on Campbell for the purpose of withdrawing the stakes thus deposited, and withdrawing and rescinding the bets, and had repeatedly so requested of Campbell, but he had refused.

It is alleged that complainant had demanded of appellee the return of $150 thus deposited by complainant, but appellee refused to return the money to him; that complainant fears and believes the stakeholder would pay the $150 deposited with him as aforesaid to Campbell unless he be restrained by order of the court; that complainant "greatly fears and believes that a suit and judgment at law against said Jesse Hipple, for the money deposited as aforesaid, would be wholly worthless, and said money wholly lost to your orator by such a course, and so charges the truth to be."

The bill prayed an injunction inhibiting Hipple from paying the money deposited by complainant to Campbell or any other person, but that he be compelled to pay it to complainant, and for other or further relief. A temporary injunction was granted and perfected.

At the return term, defendant, Hipple, appeared and demurred to the bill. On a hearing on the demurrer, the court held the bill insufficient and dismissed it for want of equity. Thereupon, complainant prayed and perfected an appeal to this court.

It is urged by appellant that this case is governed by sec. 131 of the Criminal Code. It provides that all contracts of every description made or entered into, where the whole or a part of the consideration shall be for any money, property or other valuable thing won on the games specified, on any election or unknown or contingent event whatever, shall be void and of no effect. It is contended that this is a contract, the consideration of which was a bet on the presidential election, and is void. Of this, there would seem to be no doubt. But

the question arises, whether the mere fact, that the agreement to bet and that the winner should have the whole stake is void under the statute, confers jurisdiction on a court of equity to enjoin the stakeholder from paying it to the winner and decree him to pay the portion put up by complainant to him.

That section makes no provision as to the manner in which the contract shall be avoided.

The next section provides that chancery may take jurisdiction when the loser sues to recover back the money or property lost and paid to the winner. But it will be observed that this section only relates to money, property, etc., lost and paid on gaming, and not to prevent unexecuted contracts from being enforced. That section has no application to gaming contracts not fully performed and executed. Nor does the preceding section in terms confer jurisdiction on a court of chancery. If that court can take cognizance of a case like the present, it is because of its general jurisdiction, or because that section impliedly confers jurisdiction.

In *Raroden* v. *Shadwell*, Ambler, 269, Lord HARDWICKE held, under the 9 Anne, making all securities for money won at play void, that chancery would take jurisdiction and afford relief. In that case Shadwell had won £500 of complainant at backgammon, for which he some time afterwards gave his bond and subsequently paid a part of the money. The report of the case states that the chancellor decreed with great clearness, and said, " By stat. 9th Anne, all securities for money won at play are made void, consequently the payment under any such security can not be supported."

A comparison of sec. 131 of our Criminal Code will show it to be almost a literal copy of that part of the 9th of Anne under which that decree was rendered. Hence it is seen that the court took jurisdiction from its general powers, or under sec. 3 of that act, which requires all persons to answer and discover under bills that should be preferred under the act.

In the British act it is provided that chancery may take jurisdiction for discovery. In theirs, it is in a different sec-

tion. So it is in ours. Sections 131 and 132 of our Criminal Code were, previous to the revision of 1874, in the chapter entitled "Gaming," and both formed a part of that act.

In the case of *Damus* v. *Quailes*, Littell's Select Cases, 489, it was held that a court of equity would not, under the statute of Kentucky, sustain a bill for the recovery of money paid on a gaming contract, on the mere ground that it was so lost. But it was said, that anterior to any legislation on the subject of gaming, which was not prohibited by the common law, "chancery watched gaming contracts with a jealous eye, and would frequently lay hold of slight circumstances to set them aside, such as the enormity of the demand, from which imposition would be presumed, or the fact that the sum won or lost was beyond the estate and degree of the parties, would frequently induce the chancellor to interfere. * * * Since the passage of the statutes of Virginia and this country, upon the subject, all such contracts are treated as they ought to be, and are placed upon the grade of base contracts, infected with turpitude of consideration, and are declared void. Hence equity has frequently set them aside when they were executory only, and has perpetually enjoined judgments founded upon securities given on such consideration." Numerous authorities are cited in support of the proposition, which fully sustain it.

It would, therefore, seem to follow, that chancery will assume jurisdiction to prevent the enforcement of unexecuted contracts of this character. Nor does the fact that both parties are guilty of a breach of a penal statute matter. See *Davidson* v. *Givens*, 2 Bibb, 200, where this question is discussed, and the court holds that on principle, independent of precedent, the court should exercise jurisdiction, but refers to adjudged cases which sustain the jurisdiction. We are, therefore, of opinion that the court of chancery has jurisdiction to restrain the enforcement of gaming contracts.

It is, however, claimed that the allegations of the bill are insufficient to warrant the relief, and that the demurrer for

that reason was properly sustained.   It is insisted that the bill fails to show that appellee had not paid the money to Campbell when the suit was brought.   The bill alleges that the money was deposited with appellee by appellant, and that the latter demanded it of him, and he refused to restore it, and it prays an injunction to restrain him from paying it to Campbell.   It also alleges that appellant fears that appellee will pay the money to Campbell.   These allegations are too loose and indefinite to authorize a decree in favor of complainant. Suppose the evidence should show that the bet was made, the deposit placed in appellee's hands, a demand made, and a refusal to restore it, but no more, would it justify a decree to restore it to appellant ?   In the supposed case there would be nothing to show that the money had not been paid to Campbell before the demand was made, or even that the money had not been restored to appellant before or after the demand was made.   If appellee, before any demand or notice, had paid the money, according to the terms of the bet, to Campbell, he surely should not be held liable to appellant.   The bill should have stated that the money was still in the hands of appellee. The nearest approach to such an allegation is, that complainant fears, unless appellee should be restrained by order of the court, he would pay it to Campbell.   The rules of pleading, as all know, require that the grounds for relief shall be clearly and directly alleged and positively stated.   This falls far short of the requirements of the rule.   We are clearly of opinion that the bill is fatally defective.   The rules of practice only require that the allegations and proofs shall agree, and if the allegations of the bill were all proved precisely as made, the evidence would not require that the relief should be granted if a trial were had on the bill.

The party is not required to prove more than is alleged, nor could relief be granted if more were proved, without amending the bill to conform to the proofs.

The decree of the court dismissing the bill must be affirmed.

*Decree affirmed.*

Mr. Justice Dickey :  I concur in the conclusion in this case, but not in the grounds assigned for the same.