**Wilson-Broadway Building Corporation, Appellee, v. Northwestern Elevated Railroad Company and Chicago, North Shore & Milwaukee Railroad, Appellants.**

### Gen. No. 27,564.

1. LANDLORD AND TENANT—*rights of subtenant.* A subtenant or person holding possession of property by virtue of a lease from a tenant under a top lease possesses only the rights of such tenant, the subtenant being charged with notice of all the conditions in the top lease and being bound by them.

2. LANDLORD AND TENANT—*right of landlord on breach of covenants of top lease by subtenant.* While, by reason of a want of privity of either estate or contract, a landlord cannot sue a subtenant on covenants contained in a top lease, the landlord may, nevertheless, restrain or evict the subtenant if any of such covenants are broken, there being the same remedy as against any other purchaser with notice.

3. LANDLORD AND TENANT—*right of landlord to terminate lease and evict subtenant.* Where the tenure and possession of subtenants are subject to the terms and conditions of a top lease, by which a railroad company may elect to terminate the lease on 6 months' notice, if it elects to use the property for railroad purposes, and upon termination the railroad has the right to re-enter and possess the premises without process of law, if the lessee fails to vacate, the landlord has the same rights against the subtenants as against the original tenant.

4. LANDLORD AND TENANT—*showing required of subtenant asking injunction against interference with possession.* A subtenant who appeals to a court of equity for the preservation and protection of his rights to leased premises must clearly show that he is in lawful possession of such rights.

5. INJUNCTION—*necessity that bill negative existence of condition precluding relief.* Where the facts involved in the allegations of a bill for an injunction disclose a situation under which the complainant would not be entitled to the relief sought, the bill should negative the existence of that situation, and if it fails to do so, it will be without equity.

6. LANDLORD AND TENANT—*proof required on bill by subtenant to restrain interference with possession.* Subtenants who appeal to a court of equity for an injunction to protect their rights to the leased premises, where it appears that a railroad company had the right to terminate the original top lease when it desired possession of the leased premises for railroad purposes, must negative the proper termination of the top lease in their bill for the injunction, as in such case the principal that the original possession being lawful, it will be presumed to continue, does not apply.

7. LANDLORD AND TENANT—*denial of relief to subtenant seeking injunction to prevent interference with right to possession.* Subtenants who appeal to a court of equity for an injunction to protect their rights to leased premises are not entitled to relief, when it appears that the landlord railroad company, under the terms of the original top lease, had the right to terminate the lease, when it desired possession of the leased premises for railroad purposes, and when the showing on affidavits and counter-affidavits was insufficient, on behalf of the complainants, to establish that the railroad did not want to use the premises for railroad purposes.

Interlocutory appeal from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the Branch Appellate Court. Reversed. Opinion filed May 17, 1922. Rehearing denied June 1, 1922.

GARDNER, FOOTE, BURNS & MORROW and RALPH R. BRADLEY, for appellants; WALTER M. FOWLER, of counsel.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON and ARCHIBALD CATTELL, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

308    APPELLATE COURTS OF ILLINOIS.

Wilson-Broadway B. Corp. v. N. W. El. R. Co. et al., 225 Ill. App. 306.

By this appeal the appellants seek to reverse an order of the circuit court denying their motion to dissolve a temporary injunction obtained by the complainant, Wilson-Broadway Building Corporation, upon the filing of its bill.

This suit involves certain property at the northwest corner of Wilson avenue and Broadway in the City of Chicago. The elevated structure of the Northwestern Elevated Railroad Company, used by the trains of that company as well as those of the other defendant, the Chicago, North Shore & Milwaukee Railroad, passes over this property. The property was formerly owned by one Buckingham, who executed a lease of the property to one Stohr, for a period of 35 years, ending April 30, 1944, "unless said term is sooner ended under the provisions hereof." The lease excepted the space occupied by the supports of the structure of the Northwestern Elevated Railroad Company. It expressly provided that, in the event said railroad company should, at any time, desire to use the premises for railroad purposes, the lessor, notwithstanding performance of all covenants of the lease by the lessee, should have the right to cancel the lease and declare the term ended at any time prior to April 30, 1944, upon purchasing the building which was to be erected on the premises by the lessee at a price representing a proportionate part of the cost of said building, and provided the lessor give the lessee 6 months' notice of his intention to cancel the lease. This lease was executed in May, 1909, and in September, 1911, Buckingham executed a quitclaim deed conveying the property to the Northwestern Elevated Railroad Company. Stohr died in 1912, and his interest in the premises became vested in his widow and two daughters.

The building erected on the premises by Stohr is occupied by some 20 tenants, retail merchants and others. It appears that the complainant corporation

made some attempt in May, 1921, to secure the consent of the Northwestern Elevated Railroad Company to an assignment of the lease in question to it by the Stohrs, but this failed and in August, 1921, it took a sublease of the premises from the Stohrs for the entire part of the term then remaining except one day. There was a prohibition against assignment in the lease without the written consent of the lessor, but no prohibition against subletting.

The complainant filed its bill, alleging the execution of the original lease and that Stohr, having entered into the possession, erected on the premises the building referred to. It further alleged the death of Stohr and the vesting of his interest in his widow and daughters and that on August 15, 1921, the latter had executed their sublease to the complainant, under which the complainant entered into possession, through its tenants, and subleased space to the occupants of the several stores in the building. The bill then alleged that the defendants did wrongfully threaten to take possession of the premises for their own purposes without regard to complainant's rights and that the defendants had notified the various occupants, stating that on November 30, 1921, they would take possession of the premises and demanding that said occupants quit possession on or before that date; that said defendants had stated to said occupants that they would forcibly evict the latter without process of law, and that immediately after November 30, 1921, they would remove the building in question and by means of these threats and declarations of intention the defendants had endeavored to compel the occupants of said building to vacate.

Complainant alleged that it believed that, unless the defendants and their agents were restrained from so doing, they would enter upon the premises on the first day of December, 1921, and forcibly evict the occupants and remove the various wares and mer-

chandise belonging to them and would thus interfere with the use and occupation of said building by said occupants and that they would use and keep the premises for their own purposes and profit and prevent re-entry by the complainant and the several tenants and occupants of the building.

It was further alleged that the tenants and occupants had invested large sums of money in their various enterprises and that they had long occupied this location, which was a very desirable one, and that they, therefore, had acquired a valuable good-will and that none of the leases of said occupants expired prior to April 30, 1922, and that if they were evicted by the defendants they would suffer irreparable injuries, and that, in case of such eviction, the several occupants had threatened to bring suit against the complainant, holder of the sublease from the Stohrs.

The complainant alleged that it exhibited its bill for and on behalf of itself and all the subtenants and occupants of the various portions of the building located on the premises in question. By its bill the complainant prayed that the defendants and their agents be enjoined and restrained from intimidating or coercing the various occupants and endeavoring to get them to violate their respective leases and from forcibly, violently or unlawfully entering upon the premises and evicting the complainant or any of the tenants thereof and from injuring or demolishing the building, or any part of it, and from interfering with the operation or carrying on of the various businesses conducted on the premises.

Upon the filing of the bill the court entered a temporary injunction as prayed for. The defendants duly appeared and filed their answers. Copies of the top lease and the sublease were attached to and made part of the answers. The top lease provided that, in case the Northwestern Elevated Railroad Company desired to use the premises for railroad purposes and canceled

the lease, the lessee was to deliver up possession. And, in case this was not done, the lessee covenanted that the lessor might re-enter and take possession without process of law.

The answer, in substance, denied the alleged lawful possession of the premises by the complainant and stated that such possession was entirely without authority and contrary to the terms of the top lease referred to, and contrary to the rights of the Northwestern Elevated Railroad Company and against its will.

The answers further alleged that the defendants desired to use the premises for railroad purposes; that they had, therefore, elected to cancel the lease to the Stohrs and had served written notice to that effect in May, 1921, fixing the end of the term at November 30, 1921, and that tender had then been duly made of the proportionate part of the cost of the building. It was further alleged that the defendants were informed and believed and charged that at all times since the serving of said notice on the original lessees, the complainant had known of the conditions and terms of the top lease, and that long prior to the time that the complainant took its sublease, it knew of the cancellation of the top lease by the Northwestern Elevated Railroad Company. The answer set forth other matters which will be referred to later.

After the filing of the answers of the defendants they submitted to the circiut court their motion, by which they sought to have the court dissolve the temporary injunction and, upon the hearing of this motion, certain affidavits and counter-affidavits were submitted. Upon the conclusion of the hearing of this motion, the court entered an order denying it, to reverse which order the defendants have perfected this appeal.

In support of the injunction, it is urged by the complainant that inasmuch as it is in the possession of

the property in question, not by reason of an assignment of the original lease, but by virtue of a sublease, there is neither privity of estate nor of contract between it and the defendant landlord and that, therefore, it cannot be dispossessed except by due legal process, and that the injunction was thus properly issued, inasmuch as it only enjoins the defendants from dispossessing it ''forcibly, violently and unlawfully.''

That there is no privity of either estate or contract between the sublessee complainant and the landlord defendant would seem to be clear. *Sexton v. Chicago Storage Co.,* 129 Ill. 318. But that proposition does not decide the question involved here. It is well established that a subtenant or person holding possession of property by virtue of a lease from a tenant under a top lease possesses only the rights of such tenant and nothing more. *Doty v. Burdick,* 83 Ill. 473. The possession of the subtenant is that of the tenant under the top lease and the termination of such top lease *ipso facto* works a termination of a sublease. 1 Tiffany on Landlord and Tenant, sec. 162, pages 1000-1001; Jones on Landlord and Tenant, sec. 455, page 520; *Worth v. Ware,* 90 Neb. 443; *Geer v. Boston Little Circle Zinc Co.,* 126 Mo. App. 173; *Georgeous v. Lewis,* 20 Cal. App. 255, 128 Pac. 768. A subtenant is charged with notice of all the conditions in the top lease and is bound by them. Jones on Landlord and Tenant, *supra; Georgeous v. Lewis, supra; Worth v. Ware, supra; Doyle v. Scott* (Tex. Civ. App.), 134 S. W. 828; *Missouri, K. & T. Ry. Co. of Texas v. Keahey,* 37 Tex. Civ. App. 330, 83 S. W. 1102; *Forrest v. Durnell,* 86 Tex. 647. The tenure or possession of a subtenant is subject to the terms and conditions imposed by the top lease upon the lessee. *Worth v. Ware, supra; Blachford v. Frenzer,* 44 Neb. 829; *Dunn v. Barton,* 16 Fla. 765. While, by reason of a want of privity of either estate or contract, a landlord cannot sue a sub-

tenant on covenants contained in a top lease, nevertheless, the landlord may restrain or evict the subtenant if any of those covenants are violated. The landlord in the top lease has the same remedy in equity against a subtenant as against any other purchaser with notice. *Doyle v. Scott, supra; Geer v. Boston Little Circle Zinc Co., supra; Peer v. Wadsworth,* 67 N. J. Eq. 191.

In the suit at bar, the complainant took this sublease with notice of the fact that the lessees under the top lease had an estate subject to certain terms and conditions. The tenure and possession of the complainant, under this sublease, was subject to those same terms and conditions. One of them was, that in case the railroad company elected to use the property for railroad purposes, it should have the right to terminate the lease on 6 months' notice, and further, that upon such termination, the landlord would have the right to re-enter and possess the premises without process of law, in case the lessee failed to vacate. The tenure and possession of the complainant being subject to these provisions in the top lease, the landlord, in case of election to use the property for railroad purposes and the proper termination of the lease, as provided therein, has the same rights against the subtenant as against the original tenant in case either of them refused to vacate. This is by reason of the fact, as above stated that while, because of the lack of privity of estate or contract, a landlord cannot sue a subtenant on covenants contained in the top lease, nevertheless, he may restrain or evict the subtenant if any of those covenants are violated.

Before a party may have the aid of a court of equity in the preservation or protection of his rights, it must be clearly shown that he is in lawful possession of such rights. The right of complainant, to preserve and protect which it seeks the aid of a court of equity by this bill, is the right to possession of the premises in question. It is shown by the bill of com-

plaint, on which the temporary injunction was issued, that plaintiff is in possession by virtue of the sublease from the Stohrs, dated August 15, 1921; that the interest of the Stohrs in the property was acquired through the lease from Buckingham, and that this top lease, a copy of which is not set forth in the bill nor attached thereto, but is therein referred to "the same as though the same were herein fully set forth," contained the provisions to which reference has already been made.

The answer of the defendant Northwestern Elevated Railroad Company denied that the possession of these premises by the complainant was lawful but alleged that it was "entirely without right or legal authority and contrary to the terms of said lease" from Buckingham to the Stohrs. It was further alleged in said answer that prior to May 20, 1921, the defendant desired and that it still desires to use said premises for railroad purposes and that it elected to cancel said top lease under the provisions above referred to, and that prior to May 22, 1921, it served the Stohrs with formal notice in writing of its said desire and election and thereby declared the term at an end on November 30, 1921, on which date, it was further alleged, the complainant had tendered the Stohrs $22,965.57 as the proportionate cost of the building which had been erected on said premises by the lessee. It further appears from the sublease from the Stohrs to complainant under date of August 15, 1921, which is referred to in the bill "the same as though the same were herein fully set forth," and a copy of which is attached to the answer of the defendant Northwestern Railroad Company, that said complainant therein undertook and agreed that in case the Northwestern Elevated Railroad Company should endeavor to terminate the top lease and secure possession of the premises prior to the expiration of the full term of 35 years, complainant would make such

efforts and expend such moneys, costs and attorneys' fees as might be required to resist any and all actions that might be brought by the Northwestern Elevated Railroad Company for such purpose.

It is contended by complainant that these matters set up in the answer of the Northwestern Elevated Railroad Company are not responsive to the bill but are by way of confession and avoidance, and that inasmuch as such matters are controverted by the complainant, they cannot be taken into consideration by the court on a hearing of the motion to dissolve the injunction, citing *Rothschild & Co. v. Steger & Sons Piano Mfg. Co.,* 174 Ill. App. 381.

In our opinion the situation involved here is materially different from that involved in that case. The allegations contained in the answer referred to are not set up by way of confession and avoidance but are entirely responsive to the allegations of the bill and in denial thereof. In substance the bill alleges lawful possession of the premises in question in the plaintiff, and the answer denies it.

The remedy by injunction is an extraordinary one, and before it can be successfully invoked, a complainant should be required to make it clear that he has lawful rights, for which he seeks protection, and a definite violation of them which he seeks to prevent on the part of the defendant. *Allott v. American Strawboard Co.,* 237 Ill. 55. Where the facts involved in the allegations contained in the bill disclose a situation under which the complainant would not be entitled to the relief sought, the bill should negative the existence of that situation and, if it fails to do so, it will be without equity. *Petillon v. Hipple,* 90 Ill. 420; *Warsop v. City of Hastings,* 22 Minn. 437; *Gillis v. Rosenheimer,* 64 Tex. 243; *Weeks v. Turner Lumber Co.,* 53 Fla. 793; *Birchfield v. Bourland* (Tex. Civ. App.), 187 S. W. 422.

In our opinion, the bill of complaint here involved

is defective in failing to negative the proper termination of the top lease. We do not agree with complainant's contention that its original possession being shown to be lawful, it must be presumed that it continues to be such until the contrary is shown. The situation involved here is not such as to permit the application of that principle. The original possession of complainant was under a sublease from a lessee whose top lease provided for a termination prior to the expiration of the full term under certain circumstances.

In order to clearly show such a lawful present possession in the complainant sublessee as to warrant the protection of a court of equity by means of an injunction, the bill should negative those circumstances and such a prior expiration of the top lease.

The top lease involved here contained a clear limitation and the proper termination of that lease under such limitation is not negatived in the bill. In denial of complainant's claim of lawful possession, the answer of the Northwestern Elevated Railroad Company alleges that the proper termination of the top lease. It is alleged that the defendant Northwestern Elevated Railroad Company, having determined to use the premises in question for railroad purposes and elected to terminate the lease to the Stohrs, duly notified the latter to that effect on or about May 21, 1921. That such notice was given is not denied, nor is there any denial of the allegation of the Northwestern Elevated Railroad Company that complainant knew that such notice had been served on the Stohrs at the time it took its sublease from them.

From the foregoing, in our opinion, it is clear that the record fails to disclose that complainant has any rights which equity will protect unless, in truth and in fact, the Northwestern Elevated Railroad does not want to use the premises in question for railroad purposes. On that issue the bill itself is silent inasmuch

Wilson-Broadway B. Corp. v. N. W. El. R. Co. et al., 225 Ill. App. 306.

as it fails to negative the circumstances under which complainant would not be entitled to possession. But affidavits and counter-affidavits were presented to and considered by the trial court in connection with the motion to dissolve the preliminary injunction. In support of the motion, the defendants presented the affidavit of one Griffin, secretary and treasurer of both defendant companies, to the effect that the notice of cancellation of the top lease, to which reference has been made, was duly served on the Stohrs on May 21, 1921, and that the proportionate cost of the building involved was tendered to them on November 30, 1921. It is further stated by Griffin in his affidavit that prior to the date of the service of this notice the Northwestern Elevated Railroad Company desired to use the whole of the premises involved for railroad purposes and that it has so desired continuously since that time, and that it still desires to use the premises for that purpose and further that, as soon as it shall have obtained possession of the premises, it will remove the building now on the premises and erect a passenger station for use of the passengers using the trains of the defendant companies.

In further support of their motion to dissolve the temporary injunction, the defendants presented the affidavit of one Jones, one of the attorneys for the Northwestern Elevated Railroad Company. This affidavit was to the effect that on or about May 6, 1921, a form of assignment of the top lease involved in this case was presented to the affiant by one Neltnor, an attorney at law, with the request that the Northwestern Elevated Railroad Company execute its formal consent to such assignment; that affiant told Neltnor at that time that the railroad company contemplated the cancellation of the lease referred to in the assignment and, for that reason, he was not able to say whether the company was ready to consent to the assignment; that the officers of the company declined

318      APPELLATE COURTS OF ILLINOIS.

Wilson-Broadway B. Corp. v. N. W. El. R. Co. et al., 225 Ill. App. 306.

to execute the assignment because they intended immediately to cancel the lease and to use the premises in question for railroad purposes. This affiant further stated in his affidavit that Neltnor again called upon him on or about May 9, 1912, together wth one Rosenberg, at which time the affiant told Neltnor in Rosenberg's presence that the company intended to cancel the lease and to use the premises for railroad purposes and they, therefore, refused to execute the consent to the assignment of the lease.

In opposition to the motion to dissolve the temporary injunction, the complainant submitted the counter-affidavit of Neltnor to the effect that on May 6, 1921, he did not present a form to assignment of the top lease to Jones, nor had he done so at any other time, nor had he ever requested him to present a consent to assignment of the lease to the officers of the railroad company; that he had some conversation with Jones on May 5, 1921, requesting the loan of abstracts of title covering the premises in question, but that, in this conversation, Jones made no statement to the effect that the railroad company desired to use the premises for railroad purposes. He further stated in his affidavit that on May 7, 1921, he requested Jones to give him a copy of the original lease, but that nothing was said in this conversation to the effect that the railroad company intended to use the premises for railroad purposes; that on May 9, 1921, Jones told the affiant that the real estate department of the railroad company had approved the form of consent to assignment of the lease in question which had been submitted to the Northwestern Elevated Railroad Company for execution and that the form of the consent to the assignment had been submitted to the law department of the company and had been approved by it and forwarded to the president of the company for execution; that on or about May 14, 1921, the affiant was informed by such presi-

dent that the consent to the assignment of the lease
was on his desk, but that he had been out of town,
and since returning had been too busy to examine it,
but that he would do so as soon as he could and would
then communicate with the affiant; that neither at
that time nor at any other time did said president
state to the affiant that the company desired the prem-
ises in question for railroad purposes or that the com-
pany had any intention of using them for such pur-
poses.   This affidavit then stated that the affiant "is
informed and verily believes that said Northwestern
Elevated Railroad Company has no intention to use
said premises for railroad purposes, but does intend
to acquire possession of said premises for the pur-
pose of leasing all or nearly all of said premises at
a rental largely in excess of the rental payable under"
the original lease.   The complainant also presented
the counter-affidavit of Rosenberg to the general ef-
fect that he was present at certain conversations be-
tween Neltnor and Jones, and also between Neltnor
and Budd, the president of the railroad company, and
that no mention had been made in any of these con-
versations of any desire or intention on the part of
the railroad company to use the premises in question
for railroad purposes.   This affiant also stated that he
was informed and verily believed that the company
had no intention to use the premises for railroad pur-
poses, but intended to acquire possession of them for
the purpose of leasing them at an increased rental.

In support of the injunction the complainant con-
tends that its bill and affidavits made out the prima
facie showing necessary to support the injunction and,
therefore, warranted the trial court in denying the
motion to dissolve.   With that contention we are not
able to agree, for, in our opinion, the preponderance
is clearly to the effect that the Northwestern Elevated
Railroad Company does desire and, in fact, it does
intend to use the premises in question for railroad

purposes. Unequivocal statements to that effect are made, under oath, in the affidavits of both Griffin and Jones, and Jones further states that he notified Neltnor to that effect. The latter statement is denied by the affidavits of Neltnor and Rosenberg. The fact appears, however, that on May 21, 1921, the railroad company notified the Stohrs in writing that it desired to use the premises for railroad purposes and had, therefore, elected to cancel the lease in accordance with its provisions in that regard, and there is no denial of the fact that this notice to that effect was so served on the Stohrs by the company.

It further appears that on November 30, 1921, the date named in the notice for the termination of the term, the company tendered the Stohrs the proportionate part of the cost of the building, as required by the lease in case of cancellation, due to election on the part of the company to use the premises for railroad purposes, and this fact is not denied.

It further appears, from the affidavit of Neltnor, that, in fact, an assignment of the top lease was prepared and a form of consent thereto was submitted to the Northwestern Elevated Railroad Company with the request that it execute such consent and that this was some time in May, 1921, and that Neltnor was endeavoring to procure this consent from the officers of the company, but it is clear that the consent was not obtained and, later, the complainant took its sublease.

In counter-affidavits submitted by complainant, no facts are set forth which show or tend to show that the purpose of the Northwestern Elevated Railroad Company, in canceling the lease, was anything other than the one claimed by them, but it is merely stated that the affiants are "informed and believe" that such is the case.

On those facts and on that showing it is our opinion that the complainant failed to make out a prima

facie case to the effect that, in fact, the company did not want to use the premises for railroad purposes, and, therefore, was not within the terms of the lease giving it the right to effect a cancellation prior to the ending of the full term of the lease. Having failed to make such prima facie showing, we are further of the opinion that the complainant has not shown that it possessed any rights for which it can claim protection in a court of equity and, for that reason, the order of the circuit court, denying the motion to dissolve the temporary injunction, was erroneous and it is, therefore, reversed.

*Reversed.*

O'CONNOR, P. J., and TAYLOR, J., concur.