NOTICE
Decision filed 09/17/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230560-U

NOS. 5-23-0560, 5-23-0561 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ALI VESELI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | |
| | ) | |
| MIROSLAWA N. FIGUEROA TRUST U/A 7/2/2008, VALON JUSUFI, and FRANK JUSUFI, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Valon Jusufi and Frank Jusufi, Defendants-Appellants). | ) | |
| _____ | ) | Nos. 20-CH-75, |
| | ) | 20-LM-224 cons. |
| VALON JUSUFI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALI VESELI, d/b/a Spring Garden Family Restaurant, and UNKNOWN OCCUPANTS, | ) | Honorable |
| | ) | A. Ryan Jumper, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the trial court abused its discretion in denying a motion to reconsider its January 10, 2023, order filed by Valon Jusufi and Frank Jusufi, we reverse. We

1

remand the case to the trial court for consideration of any remaining issues between the parties.

¶ 2     On January 10, 2023, the trial court entered an order finding that Ali Veseli's (Veseli) sublease was a valid existing lease on the real estate located at 5407 Godfrey Road, units A and B, in Godfrey, Illinois (the Property), and thus was binding on Valon Jusufi (Valon), who was the successor purchaser; that Valon failed to prove that he was entitled to the return of possession of the Property; that Veseli must pay Valon all rent due pursuant to the sublease; and that Valon must accept the rental payments from Veseli pursuant to the sublease. Frank Jusufi (Frank) is Valon's father and also a party. Valon and Frank appeal from the trial court's June 30, 2023, order, denying their motion to reconsider. For the following reasons, we reverse and remand.

¶ 3                                    I. Background

¶ 4     The Property was owned by the Miroslawa N. Figueroa Trust U/A 7/2/2008 (the Trust) and managed by Samuel P. Figueroa (Figueroa) as the agent for the Trust. The Property was divided into three separate units, A, B, and C. As the Trust's agent, Figueroa managed the property and negotiated all relevant contracts on behalf of the Trust.

¶ 5     In an attempt to provide clarity with the background facts, we provide a chronological list of the contractual documents and litigation filings in this case:

>  **December 9, 2010**—Lease for units A and B of the Property between the Trust and Frank;
>
>  **January 11, 2011**—Sublease for the Property between Frank and Veseli;
>
>  **October 28, 2012**—Lease for units A, B, and C of the Property between the Trust, Valon, and Frank as guarantor, containing a right of first refusal to purchase the Property from the Trust;

**November 5, 2012**—Veseli's offer to purchase the Property from the Trust subject to Valon's right of first refusal to purchase the Property;

**Shortly After November 5, 2012**—October 28, 2012, Valon lease canceled by the Trust;

**January 17, 2013**—Trust filed suit against Frank to remove cloud from title after Frank recorded his 2010 Lease with the Madison County Recorder's Office;

**February 1, 2013**—Month-to-month lease between the Trust and Veseli;

**November 16, 2016**—Valon sought to intervene in the Trust's suit against Frank;

**December 19, 2019**—Trust, Frank, and Valon settle the January 17, 2013, lawsuit and execute a contract for sale of the Property to Valon;

**Late December 2019**—Valon sent Veseli a 30-day notice to vacate the Property;

**January 29, 2020**—Veseli unsuccessfully attempted to intervene in the settled January 17, 2013, suit;

**February 4, 2020**—Veseli filed suit against the Trust, Valon, and Frank;

**March 9, 2020**—Valon filed suit against Veseli—later consolidated with Veseli's suit.

¶ 6     On December 9, 2010, Frank entered into a lease with the Trust for units A and B (the 2010 Frank Lease). The 2010 Frank Lease was for a period of 10 years from December 9, 2010, through December 8, 2020, with an option to renew for an additional 10 years. The 2010 Frank Lease contained no prohibitions against subletting units A and B of the Property.

¶ 7     Frank entered into a contractual lease with Veseli to sublease units A and B on January 22, 2011 (the 2011 Veseli Sublease). The term of this sublease ran from January 1, 2011, until November 30, 2030. Veseli paid Frank a $2700 deposit. Paragraph 31 of the 2011 Veseli Sublease

3

provides that the sublease is "binding upon and inures to the benefit of the heirs, assigns, and successors of the parties." Veseli purchased all of the furniture, fixtures, and equipment from Frank for $135,000 with the understanding that Veseli would have a 20-year right to possession of units A and B of the Property. [1]

¶ 8      On July 12, 2012, the Property was damaged by fire. Repairs took several months through January 2013, during which time Veseli continued to pay monthly rent pursuant to his sublease. There was no evidence that Veseli ever defaulted under the sublease, or that it was terminated.

¶ 9      During the period of repair, the Trust entered into a new lease with Valon (Frank's son) for all three units—A, B, and C—(the 2012 Valon Lease) on October 28, 2012. Frank signed this lease as guarantor. This 2012 Valon Lease contained an option to purchase the Property from the Trust.

¶ 10     On November 5, 2012, Veseli made an offer to purchase the Property to the Trust, contingent upon Valon declining to exercise his option to purchase under the 2012 Valon Lease. The Trust's attorney sent notification to Valon of the offer to purchase made by Veseli and set forth the 90-day period Valon had to exercise his option which expired on or about February 28, 2013. Shortly after Valon's 90-day period began to run, Figueroa informed Frank that the 2012 Valon Lease was canceled, because, as either Valon or Veseli would be purchasing the Property, the 2012 Valon Lease would no longer need to be in force. On or about November 24, 2012, Figueroa refunded the security deposit and one month's rent to Valon. Valon accepted the

---

[1]Veseli and his family have operated a restaurant on the Property since 2011, known as the Round Table Family Restaurant. Prior to Veseli's sublease, Frank operated a restaurant in the same location known as the Spring Garden Family Restaurant.

cancelation of his 2012 Lease and cashed the check. Valon did not exercise his option to purchase the Property.

¶ 11    On November 29, 2012, Frank recorded his original 2010 Lease at the office of the Madison County Clerk. The Trust filed suit against Frank on January 17, 2013, seeking to remove the cloud on the title created by that recording. Frank filed an answer with affirmative defenses, claiming that his 2010 Lease was never terminated or rescinded. Frank countersued the Trust for breaching his 2010 Lease. Veseli was not a party to this suit and did not seek to intervene.

¶ 12    While the Trust's lawsuit and Frank's counterclaim were pending, Veseli and the Trust signed a month-to-month lease on February 1, 2013, pursuant to which Veseli paid the Trust $3300 per month in rent. Frank filed an affidavit stating that the Figueroas told Veseli that Frank no longer had an interest in the Property.

¶ 13    Ultimately, in December 2019, the Trust, Frank, and Valon reached a settlement. Pursuant to the terms of that settlement, the Trust entered a contract for deed with Valon to purchase the Property on December 19, 2019. On December 26, 2019, the Trust delivered a $5000 check to Veseli to return the deposit he tendered with his 2012 offer to purchase the Property. On that same date, Valon attempted to terminate the 2011 Veseli Sublease by mailing Veseli a 30-day notice to vacate the Property.

¶ 14    The 2013 lawsuit was dismissed with prejudice by stipulation of the parties on January 3, 2020. On January 29, 2020, Veseli unsuccessfully attempted to intervene in the 2013 lawsuit. Thereafter, Veseli filed suit against the Trust, Valon, and Frank. Separately, Valon filed an eviction action against Veseli.

¶ 15    After Valon served Veseli with a five-day demand for rent, on September 29, 2020, the trial court ordered Veseli to bring the $3300 monthly rent payments current, and to continue

making monthly rent payments to his attorney. The record establishes that Veseli made all rent payments pursuant to the court's order through August 31, 2022.

¶ 16    The trial court held a trial in early August 2022 on Veseli's 2020 complaint against the Trust, Valon, and Frank. At the time the case went to trial, Veseli had six pending counts: (1) specific performance of the option to purchase the Property against the Trust and Valon; (2) breach of the option to purchase the Property against the Trust; (3) declaratory judgment against Valon; (4) request to quiet title against Valon; (5) tortious interference against Frank; and (6) tortious interference against Valon.

¶ 17    In its November 16, 2022, order following the August 2022 trial, the court entered a final judgment on Veseli's claims and quieted title to the Property in Valon pursuant to his contract for deed with the Trust. The court also held that prior to August 9, 2022, Veseli was not a hold-over tenant because the right to possession of the Property was still in dispute because of the competing leases. The trial court reserved ruling on the parties' rights to possession of units A and B of the Property.

¶ 18    More specifically, the trial court determined that there was no enforceable contract between the Trust and Veseli. Although Veseli made an offer to purchase the Property from the Trust, and the Trust held discussions about that offer with Veseli, the deal was never finalized. The court entered judgment for the Trust, Frank, and Valon on counts I through VI of Veseli's second amended complaint and reserved all additional claims and counterclaims.

¶ 19    On November 3, 2022, the trial court held a hearing on the reserved additional claims and counterclaims including Valon's counterclaim against Veseli for eviction from the Property, and

6

issues related to rental payments without additional testimony or evidence.[2] All parties presented arguments to the court. On January 10, 2023, the trial court entered its order. The court noted that there was no evidence that Frank ever served a demand upon Veseli to make rental payments to him instead of the Trust. The court also noted that there was no court order regarding the rent payments entered as part of the 2013 litigation because the parties settled that lawsuit with Valon purchasing the Property from the Trust. The court did not determine who was entitled to keep Veseli's rent payments—the Trust or Frank (minus the amount Frank would have owed the Trust under his 2010 Frank Lease). The trial court noted that because of the settlement, all those issues were waived and released. Throughout this time, Veseli remained in possession of the Property, operated his restaurant, maintained the premises pursuant to terms of his 2011 Sublease, and paid rent first to Frank, and then throughout the 2013 lawsuit, the Trust.

¶ 20    The court determined that since Frank was the lessor in the 2011 Veseli Sublease, he obviously had notice of its existence. Further, Valon was a party to the 2013 lawsuit in which the 2011 Veseli Sublease was identified in various pleadings. Valon never claimed that he lacked knowledge of the 2011 Veseli Sublease. The court then concluded that Valon had sufficient notice of the 2011 Sublease when he entered into the contract for deed to purchase the Property from the Trust.

¶ 21    The court further noted that there was no evidence that Veseli defaulted under the terms of his sublease, or that it was ever modified, amended, or terminated pursuant to its terms. Conclusively, the 2011 Veseli Sublease was intended to be binding upon the heirs, assigns, and successors of the parties.

[2]The trial court's order following the August 2022 trial was filed on November 16, 2022, and reserved ruling on the rights to possession of units A and B plus all additional claims and counterclaims. The court held this next hearing on these reserved issues and claims on November 3, 2022, following which the November 16, 2022, order was filed.

¶ 22    The trial court additionally noted that although Veseli and the Trust had a month-to-month lease, and the Trust was not a party to the 2011 Veseli Sublease, that month-to-month lease "did not act as an amendment, modification or termination of the 2011 Veseli Sublease because at the time the month to month lease was signed, the right to possession of the Property, as between Frank, the Trust and Valon, was in dispute." The court found that the 2011 Veseli Sublease was never terminated and is a validly existing lease on the Property that is binding upon Valon as the successor purchaser of the Property. Thus, Valon failed to prove that he was entitled to the return of possession of the Property. The court ordered Veseli to pay Valon for all rent due and ordered Valon to accept the rent payments.

¶ 23    Veseli attempted to make two rent payments directly to Valon both before and after the November 3, 2022, trial, but Valon, through his attorney, declined the payments. However, Veseli remained in possession of the Property.

¶ 24    On February 8, 2023, Valon filed a motion to reconsider the January 10, 2023, order. In this motion, Valon raised multiple issues claiming that the 2011 Veseli Sublease was either invalid or had been terminated.

¶ 25    On June 5, 2023, the Trust filed a motion, asking the trial court to dismiss it from the pending litigation, which was granted on June 23, 2023, releasing the Trust from further participation in this case.

¶ 26    On June 23, 2023, the trial court called the motion to reconsider for hearing and denied the it on June 30, 2023. Frank and Valon appeal from the trial court's January 10, 2023, and June 30, 2023, orders.

¶ 27                                    II. Analysis

¶ 28    The trial court's decision to grant or deny a motion to reconsider lies within the court's sound discretion and will not be reversed on appeal unless the court abused its discretion. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078-79 (2007) (citing *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006)).

¶ 29    "The purpose of a motion to reconsider is to bring to the trial court's attention a change in the law, an error in the trial court's previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision." *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 79 (citing *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 34). In simpler terms, a motion to reconsider is an implement to be used in rare situations. *Id.*

¶ 30    "Newly discovered" evidence is evidence that was unavailable before the hearing on the motion to reconsider. *Stoval*, 374 Ill. App. 3d at 1078. Therefore, a motion to reconsider is not the appropriate time to raise a new legal theory or factual argument, and thus, legal theories and factual arguments raised for the first time in a motion to reconsider are generally forfeited. *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25; see also *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36 (finding the defendant forfeited its argument raised for the first time in a motion to reconsider); *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13 (holding that issues raised for the first time in the trial court in a motion to reconsider cannot be raised in the trial court or on appeal); *Sewickley, LLC v. Chicago Title Land Trust Co.*, 2012 IL App (1st) 112977, ¶ 37 ("To allow [the] defendants to raise objections *** for the first time in a motion for rehearing and reconsideration would require this court to ignore long-standing precedent on how issues are litigated both in the [trial] court and before this court.").

9

¶ 31    Here, Valon moved to reconsider the trial court's judgment claiming that the 2011 Veseli Sublease was either terminated or was invalid. Frank signed an affidavit contemporaneous with the filing of the motion to reconsider. Frank attached his "5-day demand for rent" he contends that he sent to Veseli and the "Release of Lease" document to his affidavit. Having thoroughly reviewed the record on appeal, we cannot find where either document was previously entered into evidence. However, that does not necessarily mean that the core issue raised in the motion to reconsider—whether termination of the 2010 Frank Lease effectively ended the 2011 Veseli Sublease—involved "new evidence." To resolve this issue, we must delve into the relationship between a prime lease and a sublease.

¶ 32    We turn to contract law involving leases and subleases. "A 'sublease' is a lease between an existing tenant as a sublessor and the sublessor's tenant as a sublessee for the duration or a portion of the duration of the term remaining under the sublessor's lease with the landlord." 49 Am. Jur. 2d *Landlord & Tenant* § 947 (2024). In simpler terms, the sublease's term must be no greater than the existing term between the sublessor and the lessor/owner of the property. *Id.* There can be no privity of contract or estate between a sublessee and the original lessor "because the lease does not pass to the subtenant, and there is no contractual relation between the subtenant and the lessor." *Id.* § 967; see also *Coleman v. Madison Two Associates*, 307 Ill. App. 3d 570, 577 (1999); *Arendt v. Lake View Courts Associates*, 51 Ill. App. 3d 564, 566 (1977). In addition, the sublessee does not have any greater rights to the premises than the original lessee had. 49 Am. Jur. 2d *Landlord & Tenant* § 967 (2024).

¶ 33    Moreover, the subtenant's right to possess and use the property concludes when the original lessee's lease ends or is otherwise terminated. *Id.* § 971; *Arendt*, 51 Ill. App. 3d at 566

(citing *Wilson-Broadway Building Corp. v. Northwestern Elevated R.R. Co.*, 225 Ill. App. 306, 312 (1922)). As stated in *Arendt*:

> " 'It is well established that a subtenant or person holding possession of property by virtue of a lease from a tenant under a top lease possesses only the rights of such tenant and nothing more. [Citation.] The possession of the subtenant is that of the tenant under the top lease and the termination of such top lease *ipso facto* works a termination of a sublease." *Arendt*, 51 Ill. App. 3d at 566 (quoting *Wilson-Broadway Building Corp.*, 225 Ill. App. at 312).[3]

¶ 34    The 2010 lease entered into between Frank and Figueroa on December 9, 2010, contained no reference to a sublease. The lease was for a 10-year period, with an option to renew for an additional 10-year period. The record contains no documentation or other evidence indicating that Frank optioned the 10-year extension of the lease. The 2011 Veseli Sublease was entered into by Veseli and Frank on January 22, 2011, and was for the period between January 1, 2011, and November 30, 2030. Thus, the sublease was for a longer period than Frank's lease with Figueroa. In addition, the sublease was on a printed "commercial lease" form, and so was not specifically written as a sublease, and there were no provisions establishing and/or protecting a sublessee's rights if the primary lease ended or was terminated. However, despite the lack of the "sublease" terminology, we note that "the legal effect to be given an instrument is not to be determined by the label it bears or the technical terms it contains." *Orchard Shopping Center, Inc. v. Campo*, 138 Ill. App. 3d 656, 666 (1985) (citing *Chemical Petroleum Exchange, Inc. v. Metropolitan Sanitary District of Greater Chicago*, 81 Ill. App. 3d 1005, 1009 (1980)).

---

[3]The United States Court of Appeals distinguished this case in *Kallman v. Radioshack Corp.*, 315 F.3d 731, 737 (7th Cir. 2002), finding that the parties to the sublease included additional language in the document to preserve the rights of subtenants.

11

¶ 35    As part of the 2013 litigation that did not involve Veseli, the 2010 Frank Lease was released by the Trust via a release of lease legal document. The December 19, 2019, release of lease indicated as follows:

"The parties desire to terminate all rights and obligations under the Rental Agreement of December 9, 2010, and the Notice of Lease for Real Property dated November 29, 2012. Therefore, in consideration of the mutual agreements made and set forth in this document, the parties agree as follows:

The Rental Agreement of December 9, 2010[,] executed between Lessor and Lessee is terminated and canceled and shall be of no further force and effect."

Thus, effective December 19, 2019, when the 2010 Frank Lease was terminated and canceled, the underlying 2011 Veseli Sublease *ipso facto* was terminated and canceled. *Arendt*, 51 Ill. App. 3d at 566 (quoting *Wilson-Broadway Building Corp.*, 225 Ill. App. at 312). The trial court cited *Bezin v. Ginsburg*, 59 Ill. App. 3d 429, 438 (1978), in support of its conclusion that Valon's purchase of the property was subject to the existing sublease of which he had actual notice. However, *Besin* stated, "It is elementary that a purchaser of an interest in real property takes subject to all *validly* existing leases of which he has actual or constructive notice." (Emphasis added.) *Id.* When the 2010 Frank Lease was terminated on December 19, 2019, the underlying 2011 Veseli Sublease was no longer *valid*.

¶ 36    We acknowledge Veseli's claim that the October 27, 2014, "five day demand for rent" documentation constituted newly discovered evidence and also lacked any proof that Frank followed Illinois eviction laws relative to service of this demand (see 735 ILCS 5/9-211 (West 2012). However, because the 2010 Frank Lease was released pursuant to settlement negotiations in the underlying litigation to which Veseli was not a party, that release effectively terminated the

12

2011 Veseli Sublease. 49 Am. Jur. 2d *Landlord & Tenant* § 971 (2024); *Arendt*, 51 Ill. App. 3d at 566 (citing *Wilson-Broadway Building Corp.*, 225 Ill. App. at 312). Therefore, we conclude that the trial court erred in denying the motion to reconsider because the motion appropriately challenged the trial court's misapplication of the law. *Horlacher*, 2017 IL App (1st) 162712, ¶ 79 (citing *Hachem*, 2015 IL App (1st) 143188, ¶ 34).

¶ 37    We briefly touch upon another aspect of the trial court's order in favor of Veseli—Veseli's lease for the Property with the Trust. Although the 2010 Frank Lease ended on December 19, 2019, Veseli entered into a separate month-to-month lease with the Trust for the Property[4] on February 1, 2013. The document was entitled "Restaurant Lease Agreement." The lease term was February 1, 2013, through March 1, 2013, "and continuing each thirty (30) day period thereafter, until further notice by either Landlord or Tenant as provided." In its January 10, 2023, order, the trial court noted that because there was no evidence that Veseli's original 2011 security deposit was transferred to the Trust or refunded to Veseli, the month-to-month lease between Veseli and the Trust "did not act as an amendment, modification or termination of the 2011 Veseli Sublease because at the time the month to month lease was signed, the right to possession of the Property, as between Frank, the Trust and Valon, was in dispute." On appeal, Frank and Valon characterize the trial court's statement on this issue as indicating that the month-to-month lease should be construed as a "placeholder lease." Regardless of the characterization of the February 1, 2013, lease between Veseli and the Trust, we find that this separate lease had no impact on the legality of the 2011 Veseli Sublease. As previously stated, upon termination of the 2010 Frank Lease, the

---

[4]We note that there is a discrepancy in the sections of the Property leased by Veseli. In the original 2011 Veseli Sublease, Veseli rented units A and B. In the subsequently entered month-to-month lease Veseli entered with the Trust, the lease terms expressly indicate that Veseli was renting units B and C.

2011 Veseli Sublease came to an end. *Arendt*, 51 Ill. App. 3d at 566 (quoting *Wilson-Broadway Building Corp.*, 225 Ill. App. at 312).

¶ 38     We conclude that the trial court abused its discretion in denying the motion to reconsider. *Stoval*, 374 Ill. App. 3d at 1078-79 (citing *North River Insurance Co.*, 369 Ill. App. 3d at 572). For the above reasons, we reverse the trial court's June 30, 2023, order denying the motion to reconsider filed by Frank and Valon. Having concluded that the 2011 Veseli Sublease was terminated and was no longer a validly existing lease on the Property that would bind Frank and/or Valon, we remand this case to the trial court for any remaining issues.

¶ 39                                    III. Conclusion

¶ 40     For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed, and the cause remanded for further proceedings consistent with this order.


¶ 41     Reversed and remanded.