RICHARD TAUBER, d/b/a ADWEST MOTORS, Plaintiff-Appellee, *v.* LEE JOHNSON *et al.,* Defendants-Appellants.

(No. 55633;

First District—November 22, 1972.

Ron Fritsch, of Legal Aid Bureau, of Chicago, for appellants.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Defendants appeal from a $335 judgment entered against them for a deficiency due after repossession and resale of a used 1962 Oldsmobile.

On October 8, 1968, defendants entered into a retail installment contract with plaintiff for the purchase of a used 1962 Oldsmobile at a

price of $630 less $100 down payment. The net balance of $530, plus a finance charge of $175 (totalling $705), was to be paid by defendants in 47 weekly installments of $15 each beginning October 12, 1968, and ending August 30, 1969. In June, 1969, defendants, who were behind in their payments, took the car to plaintiff's place of business and left it there for repairs because, according to Lee Johnson's uncontradicted testimony, it would not operate. He also testified that plaintiff told defendants that he would repair the automobile for them.

Plaintiff testified that on June 9, 1969, he mailed a notice of resale to defendant Lee Johnson via certified mail to his place of employment. No notice of resale was sent to defendant Rosa Johnson, and Lee Johnson denied receipt of the notice of resale. The post office receipt was signed by Irving Silverman at the address of defendant's employer, but there is no evidence that defendant in fact received the letter.

On April 15, 1970, plaintiff sold the 1962 Oldsmobile for $50. At the time of the sale, defendants had paid 13 installments totalling $195 and still owed $510.

On September 10, 1970, judgment was entered by confession in the amount of $579.02, which was the amount due under the contract, plus costs. On October 14, 1970, the court, sitting without a jury, confirmed the judgment by confession but only in the amount of $510, less $50 proceeds from the resale, less $175 finance charges, plus $50 attorneys' fees, for a total of $335. From that judgment defendants appeal.

Defendants argue that the retail installment contract upon which plaintiff's claim is based, is illegal and may not be enforced against defendants because it requires defendants to pay a time price differential in excess of that permitted by Section 21 of the Motor Vehicle Retail Installment Sales Act.

Ill. Rev. Stat. 1967, ch. 121½, par. 562.9, defines time price differential as:

> "the amount, however denominated or expressed, which a retail buyer contracts to pay or pays for the privilege of purchasing a motor vehicle in installments, exclusive of any amounts charged for insurance, official fees, delinquency charges, attorneys' fees, court costs, or collection expenses."

Under the terms of the contract in question, the time price differential is listed as a "finance charge" amounting to $175. Since the principal balance due after the down payment is $530 and $175 is charged in less than one year (47 weeks) for the privilege of buying in installments, the effective rate of interest on the sale is more than 36% per year.

Ill. Rev. Stat. 1967, ch. 121½, par. 581, states:

> "A retail installment contract may provide for, and the seller or

holder may charge, collect and receive a time price differential computed on the entire principal balance as determined in accordance with this Act from the date of the contract to the due date of the final installment at not exceeding the following rates:

\* \* \*

Class 4—Any used motor vehicle not in Class 2 or Class 3 and designated by the manufacturer by a year model more than 4 years prior to the year in which the sale is made—$16 per $100 per year."

Since the automobile in the present case was six years old at the time of the sale, a time price differential of $36 per $100 clearly violates the statute. Beside constituting a misdemeanor, a person who draws the contract and thereby violates the act is barred from recovering any time price differential in connection with the related retail installment contract. Ill. Rev. Stat. 1967, ch. 121½, par. 584 (b).

■■ Thus, the trial judge acted properly under the terms of the statute when he reduced the confessed judgment by $175, which was the excessive finance charge originally assessed against defendants.

Defendants argue, however, not only that the rate of interest charged was excessive and not recoverable by plaintiff, but that because of the statutory violation, the entire contract was illegal on its face, and therefore no deficiency was recoverable against them.

■■ With this point we cannot agree. There is nothing in the Motor Vehicle Retail Installment Sales Act which suggests that *any* violation of the Act will render the entire contract illegal and totally unenforceable. Rather, Section 12 of the Act (Ill. Rev. Stat. 1967, ch. 121½, par. 572), specifically states numerous unenforceable provisions, and the penalty section (Ill. Rev. Stat. 1967, ch. 121½, par. 584), declares that one who knowingly violates the statute is guilty of a misdemeanor and is prohibited from recovering "any time price differential, any delinquency or collection charge, or any refinance charge \* \* \*." Specific penalties having been provided for, we cannot read into the statute an additional general penalty declaring the entire contract void if any of its provisions are violated.

■■ In the absence of a showing of legislative intent to void any contract which violates this statute, we believe the correct statutory result would be reached by permitting recovery of the amount still due and owing from the sale, less the amount recovered on resale, and denying recovery of any interest on the transaction. Thus, the contract which defendants signed would remain valid but the entire finance charge would be unenforceable against them.

■■ Next, defendants argue that plaintiff has the burden of proving that he has complied with the requirements for disposition after repossession set forth in Section 20 of the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1967, ch. 121½, par. 580), and Section 9—504(3) of the Uniform Commercial Code. Ill. Rev. Stat. 1967, ch. 26, par. 9—504 (3). Section 20 refers the parties to Section 9—504 (3) of the Uniform Commercial Code when there has been a default by the buyer under a retail installment contract. Thus, every aspect of a disposition after repossession, "including the method, manner, time, place and terms must be commercially reasonable." Also, "reasonable notification" must be sent by the secured party to the debtor informing him of the time after which any private sale is to be made, or the time and place of any public sale. Notification under Section 9—504 (3) has been found to be reasonable when merely sent by certified letter to debtor's last known place of business. There is no requirement that plaintiff prove actual receipt of the letter by defendant. (*Elm Buick Co., Inc. v. Moore*, 150 Conn. 631, 192 A.2d 638.) "Various conditions might well exist which would make actual receipt of the notice impossible. If such requirement existed the defaulting party would have it in his power to thwart the sale." *Elm Buick Co., Inc. v. Moore*, 150 Conn. 631, 192 A.2d 638.

■■ In the present case, however, plaintiff proved only that an envelope had been sent, by introducing into evidence the certified mail return recept. He utterly failed to present any evidence as to the contents of the envelope, and there was nothing to show that it contained the proper statutory notice of intent to resell the car. No copy of the notice allegedly sent to defendant was sought to be introduced, and plaintiff testified that he could not recall the contents of the letter. In the absence of any showing of the contents and substance of the letter, we must conclude that plaintiff has failed to sustain his burden of proving compliance with the requirements for notice of disposition. See *Barker v. Horn*, 245 Ark. 315, 432 S.W.2d 21.

Ill. Rev.Stat. 1967, ch. 26, par. 9—507 states:

"If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part."

■■ Thus, defendant may recover from plaintiff any loss to him

caused by the failure to receive notice. Loss may be determined to be the difference between what the car was actually sold for and the price it would have brought had defendants been given notice and attended the sale. (*T & W Ice Cream, Inc. v. Carriage Barn, Inc.*, 107 N.J. Super. 328, 258 A.2d 162.) Had defendants received notice, they could have purchased the car for the amount still due on the contract and eliminated the deficiency altogether, as there is a presumption that the secured collateral is worth at least the amount of the debt and the secured party has the burden of proving the amount actually collected was commercially reasonable. (*Universal C.I.T. Co. v. Rone*, 248 Ark. 665, 453 S.W.2d 37. See *First National Bank of Bellevue v. Rose*, 188 Neb. 362.) If the secured party cannot sustain his burden of proving a commercially reasonable resale, he may be denied the amount of the deficiency. (*Skeels v. Universal C.T.T. Credit Corp.* (W. D. Pa. 1963), 222 F.Supp. 696. Cf. *Mallicoat v. Volunteer Finance & Loan Corp.*, 57 Tenn.App. 106, 415 S.W.2d 347.) We believe plaintiff has failed to demonstrate that the resale of the car for $50 was reasonable since no evidence concerning the sale itself was presented, and, as between the parties, such evidence was available only to plaintiff. The buyer did not testify and we do not know whether the car was repaired before the sale. Also, the blue book price for a 1962 Oldsmobile was not introduced nor was there a showing of other bids on the car which would have demonstrated its approximate fair market value.

There is always the possibility of abusive practices in the sale, repossession and resale of used cars unless plaintiff is required to prove compliance with the statute concerning notice sent to defendants, and that the practices and price at resale were reasonable. Otherwise, a car could be resold secretly to another dealer at an extremely low price, only to return to the market at a price at or above its fair market value. Thus, one used car could go through a series of sales and resales and each time bring a high deficiency judgment against the defaulting purchaser who initially paid an inflated price and an excessive rate of interest on the contract. See *Morris Plan Co. of Bettendorf v. Johnson* (133 Ill.App.), 271 N.E.2d 404.

■■ In the present case, plaintiff induced the purchaser to return his car for repairs and, instead of fixing it, sold the car ten months later. He had charged defendants an illegal rate of interest on the initial contract, in violation of the Motor Vehicle Retail Installment Sales Act, and failed to prove that proper notice was sent or that the sale was commercially reasonable. In addition, he failed to send any notice whatsoever to Mrs. Rosa M. Johnson who had joined her husband in the contract. (See

*Modern Finance Co. v. Enmen,* 25 Ohio Misc. 216, 267 N.E.2d 450.) In consideration of all the foregoing, the judgment of the trial court must be reversed and remanded with directions to enter judgment in favor of defendants.

Reversed and remanded with directions.

LORENZ, P. J., and DRUCKER, J., concur.