A. A. STORE FIXTURE CO., INC., Plaintiff-Appellant, *v.* ERNEST KOUZOUKAS *et al.*, Defendants-Appellees.

First District (1st Division)　No. 79-705

Opinion filed August 11, 1980.

Kenneth E. Scheiwe, of Chicago, for appellant.

Paul T. Kalinich, of Glen Ellyn, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff, A. A. Store Fixture Co., Inc., brought an action to revive a judgment entered by confession against the defendants, Ernest and Nicholas Kouzoukas, on June 8, 1967. The trial court denied plaintiff's motion to strike an affirmative defense presented by the defendants and dismissed the action. The plaintiff brings the present appeal from both of these orders of the trial court. Four issues are urged:

(1) whether the trial court incorrectly found that the plaintiff failed to notify the defendant of the sale of the collateral and failed to hold a commercially reasonable sale;

(2) whether a finding of inadequate notice of a sale of collateral will bar a deficiency judgment under section 9—504(3) of the Uniform Commercial Code;

(3) whether a claim of conversion is an improper defense to a *scire facias* action; and

(4) whether a claim of conversion is untimely in a *scire facias* action. We affirm.

The controversy giving rise to the present revival action arose from the November 24, 1965, contract for the sale and installation of certain restaurant equipment by the plaintiff to the defendants. To finance this purchase, the defendants executed a note and security agreement on the equipment. Upon the defendants' default in their payments, the plaintiff filed suit on the note and a judgment by confession was entered on June 8, 1967, in the amount of $43,810.60. In October or November of 1967, the plaintiff repossessed the restaurant equipment which was subject to the security agreement.

The immediate action was filed on November 30, 1976, as an action to revive the judgment of June 8, 1967, by *scire facias* pursuant to section 25 of "An Act in regard to limitations" (Ill. Rev. Stat. 1975, ch. 83, par. 24b). The plaintiff's complaint alleged that the original judgment "had not been paid or satisfied in any part whatsoever." An amended complaint, however, acknowledged that the defendants had made payments

to date in the amount of $1,500 and that equipment removed from defendants' store was valued at $9,500. Therefore, according to the amended complaint, the total amount credited to the defendants upon the judgment was $9,125, after deducting certain costs. On August 28, 1978, an evidentiary hearing took place. At that time, the defendants requested and were granted leave to file an affirmative defense grounded upon the failure of the plaintiff to comply with the notice requirements of section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 9—504(3)).

The following evidence was received at the evidentiary hearing. The president of plaintiff corporation, Irving Naiditch, testified that his company repossessed the equipment when it was informed by the defendants' landlord, Sol Gabriel, that the defendants had abandoned the premises of the restaurant. During this conversation, Gabriel asked him to remove the equipment. Naiditch further testified that he thought his lawyers had sent a notice of the sale to the defendants, but on cross-examination admitted that he could not remember whether he or his lawyer had sent the notice. He was unable to produce a copy of the notice. He did state, however, that he had personally attempted to reach defendants both at the restaurant and at their home but was unable to do so. No third persons were notified of the sale. Naiditch also testified that, prior to the sale, he placed a fair market value of $9,500 on the equipment. He stated that this amount differed measurably from the contract price because the contract price included the cost of the installation charges. He based his opinion of the value of the equipment upon his expertise in the valuation of restaurant equipment derived from 33 years of having been in the restaurant equipment business and 17 years of working as an insurance appraiser of restaurant equipment. Naiditch also stated that his company purchased the equipment at its fair market value at the private sale, and he credited the defendants' account with this amount minus his costs.

Nicholas Kouzoukas testified that at the time that the equipment was repossessed his restaurant was closed for remodeling. Neither he nor his brother received a notice of sale of the equipment, although during this period he picked up mail from the restaurant. Furthermore, both he and his brother were in the Chicago area, had a telephone at their residence, and also received mail there. The plaintiff was aware of this home phone because he had contacted him at his residence prior to the repossession of the equipment. In fact, Kouzoukas testified that he and his brother did not have any notice of the first judgment or otherwise learn of the judgment until 1969, nearly two years after the repossession of the equipment.

After the evidentiary hearing, plaintiff filed a motion to strike the defendants' affirmative defense, which was denied on October 26, 1978.

Subsequently, on December 20, 1978, the trial court dismissed the plaintiff's complaint. The trial court specifically found that (1) there was no notice of sale given to the defendants, and (2) no commercially reasonable sale was held. The order also included a provision which stated that the judgment in the first cause had been satisfied of record.

■■ The pivotal issue raised in this appeal is whether a defendant debtor in a *scire facias* revival action may raise as an affirmative defense the plaintiff-secured party's failure to comply with the notice requirement of section 9—504(3) of the Uniform Commercial Code. (Ill. Rev. Stat. 1965, ch. 26, par. 9—504(3).) The burden of proving compliance with the notice requirement is on the creditor. *Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 407 N.E.2d 964; *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d 926; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 349 N.E.2d 573; *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180.

■ The plaintiff argues that the evidence supports its contention that notice was given and that it was not necessary for it to show that the defendants received notice in order to sustain its burden of proof under section 9—504(3). (*Tauber v. Johnson.*) We disagree. Defendant Nicholas Kouzoukas testified that notice was never received. While the plaintiff's president did testify that it was his belief that notice was sent, he could not remember whether he or his attorney sent the notice. Moreover, no copy of such notice or evidence of its contents was presented. Based on these facts, the trial court properly concluded that the plaintiff failed to prove notice. *Tauber v. Johnson.*

An examination of the Illinois decisions which have addressed the effect of a secured party's failure to comply with the notice provision of section 9—504(3) reveals two conflicting lines of authority. One line holds that a secured party may not obtain a deficiency judgment in the absence of compliance with the notice requirement of section 9—504(3). (*Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057; *Stensel v. Stensel* (1978), 63 Ill. App. 3d 639, 380 N.E.2d 526; *Morris Plan Co. v. Johnson* (1971), 133 Ill. App. 2d 717, 271 N.E.2d 404.) The other line holds that noncompliance with section 9—504(3) does not act as a bar to the recovery of a deficiency but creates a rebuttable presumption that the value of the collateral equals the amount of the debt. This places the burden on the secured party of proving that the fair market value of the goods sold was less than this amount. (*Chicago City Bank & Trust Co. v. Wilson; Commercial Discount Corp. v. Bayer; General Foods Corp. v. Hall; Tauber v. Johnson.*) We do not find it imperative to examine these lines of authority to determine the better reasoned view. For a full discussion see *United States v. Whitehouse Plastics* (5th Cir. 1974), 501

F.2d 692. Under our reading of the record the trial court must be affirmed under either view.

■■ Under the more stringent line of authority, a creditor who has failed to provide notice must (1) rebut the presumption that the collateral is worth at least the amount of the debt and (2) prove that the collateral was sold at a commercially reasonable sale. (*Commercial Discount Corp. v. Bayer*; *General Foods Corp. v. Hall*; *Tauber v. Johnson.*) From our examination of the record, the only evidence of the value of the collateral at the time of its repossession was the testimony of Naiditch, president of plaintiff corporation, that its fair market value was $9,500. This valuation was based on his experience in evaluating equipment of this type for over 30 years. While his testimony was not refuted, contrary to the plaintiff's assertion, the testimony of an expert witness as to the value of the collateral is subject to the trier of fact's evaluation as to credibility. (See *Commercial Discount Corp. v. Bayer*; *United States v. Whitehouse Plastics* (5th Cir. 1974), 501 F.2d 692.) Here, there was a clear possibility of bias due to the affiliation of the witness with the corporate plaintiff. We think from the foregoing evidence that the trial court could have determined that the plaintiff did not rebut the presumption that the collateral was equal in value to the debt.

The only evidence in the record as to the commercial reasonableness of the sale is again found in the testimony of Naiditch. He stated that no third persons were contacted in order to solicit bids. He also testified that his company bought the collateral in a private sale and made a bookkeeping entry to reflect its receipt. An examination of the corporate ledger shows a zero balance for defendants' account in 1967, presumably after the purchase of the equipment. We should note that the ledger entry and the stipulated record do not support the plaintiff's argument that the zero balance entered in the ledger does not indicate the value of the equipment upon its repossession, but rather a recognition of the unlikelihood of collecting anything further on the debt.

The trial court, after hearing the evidence, determined that:

> "* * * [A] sale never actually was conducted in any way because the plaintiff testified that he just kept it in his own office and made a bookkeeping entry as to what he thought the value was.
>
> There is no way anyone can say that was a sale. There was no sale of any kind, certainly it is not commercially reasonable, even if you call it a sale."

We do not think that this finding was manifestly erroneous in light of the evidence. While neither the price received at the sale of the collateral (*Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 407 N.E.2d 964; *In re Application of Bickel* (1973), 14 Ill. App. 3d 813,

303 N.E.2d 541) nor the secured party's purchase of the collateral in a private sale is indicative of a commercially unreasonable sale, article nine does set forth several requirements to be met in these situations. (Ill. Rev. Stat. 1965, ch. 26, pars. 9—507(2), 9—504(3).) Section 9—507(2) in pertinent part provides:

> "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."

Section 9—504(3) provides in pertinent part:

> "The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

Here the plaintiff-secured party presented no evidence of a recognized market for this equipment, a current price in a market at the time, or standard price quotations. Nor did he advertise or solicit bids. Accordingly, we conclude that the plaintiff failed to meet its burden that the sale was commercially reasonable. Ill. Rev. Stat. 1965, ch. 26, pars. 9—507(2), 9—504(3); *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d 926.

■■ We must next consider whether the trial court properly determined that the facts requiring the denial of a deficiency judgment also warranted a dismissal of the plaintiff's revival action. In Illinois a judgment is only enforceable pursuant to statutes found in chapter 77 of the Illinois Revised Statutes (Ill. Rev. Stat. 1975, ch. 77, par. 1 *et seq.*). In an action to revive a judgment by *scire facias*, a creditor must describe the original judgment by date and amount and state whether or not it has been partially satisfied. (Ill. Rev. Stat. 1975, ch. 83, par. 24b; *J. D. Court, Inc. v. Investors Unlimited, Inc.* (1980), 81 Ill. App. 3d 131, 400 N.E.2d 1083; *Coby v. Turner* (1964), 48 Ill. App. 2d 37, 198 N.E.2d 346.) A defendant may, thereafter, raise as an affirmative defense either (1) that the judgment did not exist, or (2) that it has been satisfied. (*Bank of Edwardsville v. Raffaelle* (1942), 381 Ill. 486, 45 N.E.2d 651; *Bank of Eau Claire v. Reed* (1908), 232 Ill. 238, 83 N.E. 820; *J. D. Court, Inc. v. Investors Unlimited, Inc.*; *Coby v. Turner.*) These defenses must appear of record. *J. D. Court, Inc. v. Investors Unlimited, Inc.; Coby v. Turner.*

■ Because the plaintiff here has failed to comply with the dictates of section 9—504(3), it is estopped from arguing that the lack of notice was not apparent from the record and, therefore, not an affirmative defense. Were we to decide otherwise, the import of this provision and the purpose of the Code, generally, would be ignored. If failure to provide notice may not be raised in an action to revive a judgment, then a secured party could always seek a judgment and sell the collateral in violation of section 9—504(3) without any recourse on the debtor's part for the loss of revenue realized on the sale of the collateral.

■ Moreover, we find no reason to distinguish the present case from the line of cases which have determined the effect of failure to comply with section 9—504(3) when this issue has been raised in an action for a deficiency judgment. An action to revive a judgment after sale of collateral pursuant to the Uniform Commercial Code is in effect an action to recover a deficiency judgment. Thus, we find that while the original judgment was valid when it was entered and the secured party consequently had the right to enforce it, this right was waived by noncompliance with section 9—504(3), just as the right to seek a deficiency judgment is waived by noncompliance. (*Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295, 372 N.E.2d 926; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 349 N.E.2d 573; *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180.) Accordingly, it was proper for the trial court to dismiss the plaintiff's revival action when the plaintiff failed to meet its burden of proof as to both the delivery of notice and the commercial reasonableness of the sale.

Because of the position we have taken, we find it unnecessary to consider the other arguments raised by the plaintiff. The orders of the trial court denying the plaintiff's motion to dismiss the defendants' affirmative defense and dismissing the complaint are, therefore, affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.