(No. 58973.—

FIRST GALESBURG NATIONAL BANK AND TRUST COMPANY, Appellant, v. LOUIS JOANNIDES *et al.*, Appellees.

*Opinion filed September 20, 1984.*

Stephen R. Olson, of Lucas, Brown & McDonald, of Galesburg, for appellant.

Barash, Stoerzbach & Henson, of Galesburg (Barry M. Barash, of counsel), for appellees.

JUSTICE WARD delivered the opinion of the court:

This appeal involves a conflict within the appellate court on the question of whether the failure of a secured creditor to give notice to the debtor .or guarantor (see *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295) of the sale of collateral bars the creditor from recovering a deficiency from the debtor or guarantor. The circuit court of Knox County held that the plaintiff, First Galesburg National Bank (the bank), could not re-

cover from Louis and Jennie Joannides, the defendants, guarantors on a loan made by the bank. The appellate court affirmed. (116 Ill. App. 3d 810.) The appellate court's decision was on the ground that the bank failed to give the guarantors notice of the sale of the collateral as required by section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3)). We granted the bank's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

Tim Joannides, the defendants' son, was the owner of an automobile dealership incorporated as "Town and Country Dodge." The bank financed the dealer's new-car inventory through a "floor plan" agreement. Under the arrangement, Town and Country was given a credit line at the bank to purchase new cars, and it agreed to remit the proceeds to the bank as each car was sold.

Town and Country suffered financial reverses in 1979 and 1980, and the bank asked the dealership to seek financing elsewhere. Tim Joannides then agreed to obtain a guaranty of payment of his company's indebtedness from his parents. The bank continued the financing of Town and Country upon the making of a $50,000 guaranty by the defendants, which guaranty was executed on February 19, 1980. The financial difficulties of the dealership continued. As of May 8, 1981, the bank had determined that 32 cars had been sold by Town and Country without tendering the proceeds to the bank in compliance with the loan agreement. Upon discovering this, the bank insisted that Tim assign the titles and certificates of origin of the remaining cars to it. Between May 8 and 23 the bank sold seven of these autos. On May 23, 1981, the defendants received a letter from the bank. The letter read:

> "On Friday, May 8, 1981, the doors of Town and Country Dodge were closed to the public and subsequent to that the business has been placed in bankruptcy.

The intent of this letter is to notify you that it now appears a loss will be realized and the bank will be forced to ask you to honor your guarantee of $50,000 dated February 19, 1980.

We are available at your convenience to discuss this situation if you have any questions."

The Joannides did not respond. When the bank completed the liquidation of the dealership inventory, there was a deficiency of $161,628.79 in principal and $52,829.19 in unpaid interest.

The bank then brought an action against the defendants on the guaranty. The Joannides raised four affirmative defenses, only one of which is relevant here. It is that the bank disposed of the collateral by sale without notice to the guarantors and in a commercially unreasonable manner. (See Ill. Rev. Stat. 1981, ch. 26, par. 9—504.) In denying a motion by the defendants for summary judgment, the trial court held that the question of whether the sale of collateral was commercially reasonable was a question of fact for the jury. The jury returned a verdict for the Joannides, and judgment was entered in their favor. The appellate court affirmed, but on the ground that the action was barred because the Joannides were not given notice that there would be a sale of the collateral.

Under the "absolute-bar" view, which the holding of the appellate court illustrates, a secured creditor is precluded from bringing a deficiency action against the debtor unless the debtor was given notice of the proposed sale of the collateral. The defendants contend that the absolute-bar holding is necessary to protect the debtor's right to redeem the collateral. Without it, they say, a creditor would not be deterred from failing to give notice to the debtor. Giving a remedy of damages for a failure to comply with the notice requirement (Ill. Rev. Stat. 1981, ch. 26, par. 9—507) is an inadequate deter-

rent because, they argue, it places a burden on the debtor to prove that the debtor sustained damages because of the failure of notice. The absolute-bar view has been followed in some holdings of the appellate court. See *State National Bank v. Northwest Dodge, Inc.* (1982), 108 Ill. App. 3d 376; *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199; *Stensel v. Stensel* (1978), 63 Ill. App. 3d 639.

The bank argues in favor of the "rebuttable-presumption" or "remedial" view. Under this, if the collateral is sold without notice to the debtor or the guarantor, the presumption is that the value of the collateral sold was equal to the indebtedness. The presumption can be rebutted by a showing by the creditor that the value of the collateral was less than the indebtedness and that the sale was "commercially reasonable." The bank contends that under this view the debtor and guarantor are adequately protected from any harm arising from a lack of notice, while the debtor or guarantor is precluded from obtaining a windfall benefit from a failure to give notice. This view has been followed in a majority of the cases in which the appellate court has considered the question. See, *e.g. National Boulevard Bank v. Jackson* (1981), 92 Ill. App. 3d 928; *Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452; *Lakeshore National Bank v. McCann* (1979), 78 Ill. App. 3d 580; *National Republic Bank v. Proctor* (1978), 66 Ill. App. 3d 534; *Commercial Discount Corp. v. Bayer* (1978), 57 Ill. App. 3d 295; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147; *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789.

Section 9—504 of the Uniform Commercial Code provides for the right of the creditor to dispose of collateral upon default of the debtor and requires that the disposition of collateral be made in a "commercially reasonable" manner. (Ill. Rev. Stat. 1981, ch. 26, par. 9—504.) Subsection (2) codifies the right of a creditor to obtain a

deficiency judgment from the debtor, providing:

"(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(2).)

The paragraph which follows, subsection (3), sets out the conditions for the sale of collateral, including the requirement of notice:

"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral." Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3).

Nowhere in the sections of the Code concerning debtor defaults (Ill. Rev. Stat. 1981, ch. 26, par. 9—501 *et seq.*) (part 5), is it provided that a lack of notice bars a deficiency judgment. Nor is it provided that proper notice is a condition to the bringing of a deficiency action. Too, section 9—507 explicitly states consequences which are to follow a failure to comply with the provisions of part 5 of the Code. In what is relevant here it provides:

"(1) If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party

prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part." (Ill. Rev. Stat. 1981, ch. 26, par. 9—507.)

Section 9—507 thus creates a remedy for "any loss" caused by a "failure to comply with the provisions of [part 5]," which includes, of course, the notice requirement in section 9—504(3). Any loss arising from a lack of notice will give rise to a right to recover for the loss. Section 9—507 does not provide that a failure to comply with part 5 bars the creditor from bringing an action to recover any deficiency. No basis for an "absolute-bar" principle is found anywhere in article 9.

The absolute-bar rule is also contrary to the intendment of article 9 that penal damages or results be avoided and that the aggrieved party be placed in "as good a position as if the other party had fully performed." (Ill. Rev. Stat. 1981, ch. 26, par. 1—106.) The absolute-bar rule, by barring a deficiency action regardless of whether the debtor has suffered damage from the lack of notice, provides a windfall for the debtor and arbitrarily penalizes the creditor. For example, here the guarantors testified that they had no interest in attending the sale or in purchasing any of the collateral. If the sale of collateral was commercially reasonable, the debtors have suffered no loss or damage and should not be released from liability for any deficiency.

The rebuttable-presumption rule is more fair and is consistent with the above-stated intendment of article 9. If a creditor fails to give notice, the presumption is raised that the value of the collateral is equal to the indebtedness. If the creditor rebuts this presumption and shows, too, that the sale was commercially reasonable, he may maintain an action against the debtor or, of course, the guarantor, for any deficiency. "Any loss" suffered by the debtor as a consequence of the failure to

give notice is recoverable under section 9—507 and may be set off against the deficiency. Thus, a failure to give notice places the burden on the creditor to show the propriety of the sale and makes him liable under section 9—507 for injury to the debtor which results from his omission. This provides an adequate deterrent to an improper sale on the part of the creditor.

We consider that the rebuttable-presumption standard should be applied in determining the consequence of a failure of notice to a debtor or guarantor. This is consistent with the conclusion reached in most jurisdictions where the question has been examined. See, *e.g., Hoch v. Ellis* (Alaska 1981), 627 P.2d 1060; *Universal C.I.T. Credit Co. v. Rone* (1970), 248 Ark. 665, 453 S.W.2d 37; *Leasing Associates, Inc. v. Slaughter & Son, Inc.* (8th Cir. 1971), 450 F.2d 174 (applying Arkansas law); *Zimmerman v. Cook* (Colo. App. 1982), 651 P.2d 910; *Savings Bank v. Booze* (1977), 34 Conn. Supp. 632, 382 A.2d 226; *Rushton v. Shea* (D. Del. 1976), 423 F. Supp. 468 (applying Delaware law); *Bank of Oklahoma v. Little Judy Industries, Inc.* (Fla. App. 1980), 387 So. 2d 1002; *Mack Financial Corp. v. Scott* (1980), 100 Idaho 889, 606 P.2d 993; *Hall v. Owen County State Bank* (1977), 175 Ind. App. 150, 370 N.E.2d 918; *Abbott Motors, Inc. v. Ralston* (1964), 28 Mass. App. Dec. 35; *Church v. Mickler* (1982), 55 N.C. App. 724, 287 S.E.2d 131; *Conti Causeway Ford v. Jarossy* (Dist. Ct. 1971), 114 N.J. Super. 382, 276 A.2d 402, *aff'd* (Super. Ct. App. Div. 1972), 118 N.J. Super. 521, 288 A.2d 872; *Security Trust Co. v. Thomas* (1977), 59 A.D.2d 242, 399 N.Y.S.2d 511; *State Bank of Burleigh County Trust Co. v. All-American Sub., Inc.* (N.D. 1980), 289 N.W.2d 772; *United States v. Willis* (6th Cir. 1979), 593 F.2d 247 (applying Ohio law); *Investors Acceptance Co. v. James Talcott, Inc.* (1969), 61 Tenn. App. 307, 454 S.W.2d 130; *United States v. Whitehouse Plastics* (5th Cir. 1974), 501 F.2d 692 (apply-

ing Texas law); *Zions First National Bank v. Hurst* (Utah 1977), 570 P.2d 1031; *Commercial Credit Corp. v. Wollgast* (1974), 11 Wash. App. 117, 521 P.2d 1191. *Cf. Poti Holding Co. v. Piggot* (1983), 15 Mass. App. 275, 444 N.E.2d 1311.

Because of the appellate court's holding that the bank's bringing an action was barred, the other issues raised by the parties were never examined by the court. The judgment of the appellate court is reversed, and the cause is remanded to the appellate court to consider those issues in light of the views we have expressed here.

*Reversed and remanded.*