FOURTH DIVISION
June 29, 2007

No. 1-06-1858

GENERAL MOTORS ACCEPTANCE CORPORATION, )      Appeal from
                                                             )      the Circuit Court
         Plaintiff-Appellant,                                )      of Cook County.
                                                             )
     v.                                                                      )
                                                             )
LULA STOVAL,                                            )      Honorable
                                                             )      Sanjay T. Tailor,
         Defendant-Appellee.                              )      Judge Presiding.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

This case arises out of a cause of action filed by plaintiff General Motors Acceptance Corporation (GMAC) against defendant Lula Stoval, seeking the entry of a replevin order to recover an automobile and damages for breach of contract. GMAC appeals from orders of the circuit court granting judgment in favor of defendant and denying GMAC's motion to stay the circuit court's findings and reopen evidence. On appeal, GMAC contends that the circuit court erred in granting judgment in favor of defendant where the court improperly applied notice provisions under section 9-611 of the Uniform Commercial Code (UCC) (as enacted by Illinois, 810 ILCS 5/9-611 (West 2002)); the court improperly found that GMAC was required to produce a copy of a notice allegedly sent to defendant; and the court improperly held that the failure to provide such notice under section 9-611 of the UCC was an absolute bar to the entry of a deficiency judgment against defendant. GMAC also contends that the circuit court abused its discretion by denying GMAC's motion to stay the judgment and reopen evidence in this case. For

1-06-1858

the following reasons, we affirm in part, reverse in part, and remand.

## I. Background

On July 8, 2005, GMAC filed a verified complaint against defendant seeking to recover a 2002 Chevrolet Cavalier automobile and money damages.[1] Count I of the complaint asserted a cause of action for replevin pursuant to section 19-101 of the Code of Civil Procedure (Code) (735 ILCS 5/19-101 (West 2002)). Count II sought damages for breach of contract against defendant for the full amount claimed to be due to GMAC pursuant to a sales contract for the vehicle at issue and interest, attorney fees and costs incurred by GMAC.

Defendant was served with process on August 3, 2005 and a replevin hearing was scheduled for October 11, 2005. On or about September 12, 2005, the vehicle at issue was recovered from Birdie Moore, whose address was provided by defendant. On October 11, 2005, count I of GMAC's verified complaint was voluntarily dismissed with prejudice. The vehicle was sold for $5,300 at a public auction on October 13, 2005.

On March 21, 2006, the circuit court held a bench trial as to count II of GMAC's complaint. The parties submitted a bystander's report of the proceedings, which showed that Mike Pappas testified for GMAC and defendant testified on her own behalf. The circuit court received into evidence: (1) a copy of the retail installment contract executed by defendant in conjunction with the purchase of the vehicle at issue; (2) a copy of the certificate of title for the

---

[1] Birdie Moore was also named as a defendant in count I of the complaint. The record shows that she was not served with summons and apparently did not appear in this case. Count I was subsequently voluntarily dismissed with prejudice.

-2-

vehicle at issue; and (3) a copy of the "Post-sale Calculation of Surplus or Deficiency Notice" (Deficiency Letter), which was sent by GMAC to defendant.

Mike Pappas testified for GMAC that he was an account collection manager and was responsible for collecting defendant's delinquent account. Pappas testified that on August 22, 2002, defendant executed a retail installment contract in conjunction with the purchase of the vehicle. Pappas testified that pursuant to the terms of the retail installment contract, GMAC was granted a security interest in the vehicle purchased and GMAC perfected its security interest by recording its lien of the vehicle's certificate of title. Pappas testified that, on or about April 6, 2005, defendant defaulted on the payments required of her pursuant to the retail installment contract and failed to cure the default at any time subsequent thereto. Pappas then testified that on July 8, 2005, GMAC filed suit to recover the vehicle and collect on the balance due to GMAC pursuant to the retail installment contract. Pappas testified that GMAC obtained possession of the vehicle on or about September 12, 2005, from Birdie Moore, whose address was provided by defendant.

Pappas testified that based upon his review of GMAC's records regarding the events in question, after recovering the vehicle GMAC sent to defendant a "Notice of Our Plan to Sell Property" (Notice). Pappas testified that the Notice informed defendant that GMAC had recovered possession of the vehicle due to defendant's default under the retail installment contract and would sell the vehicle at public auction on a date certain if defendant did not redeem the vehicle by making certain payments to defendant. Pappas testified that the vehicle was subsequently sold at a public auction at Milwaukee Auto Auction, in a commercially reasonable

manner on or about October 13, 2005.

Pappas testified that the method of sale employed by GMAC was calculated, over the course of the many thousands of transaction that GMAC was involved in, to recover the greatest amount of money for the vehicles sold at the lowest average cost to GMAC. Pappas testified that at the time of the vehicle's sale, defendant's account had an unpaid balance of $16,153.97. Pappas testified that the vehicle was sold for $5,300. Pappas testified that prior to the sale, GMAC spent $310 to repossess the vehicle and transport it to the Milwaukee Auto Auction, spent $120 to store the vehicle at the Milwaukee Auto Auction and recondition the vehicle in preparation for sale, and spent $30 on sale costs incurred by the Milwaukee Auto Auction. Pappas testified that after the sale, defendant was entitled to, and did receive, as credits against her account the sums of $131.61 as a rebate of unearned insurance premiums and $325.78 as a refund of defendant's unearned service contract. Pappas testified that after all appropriate debits and credits were applied, defendant owed GMAC the sum of $10,856.58.

On cross-examination by defendant's attorney, Pappas testified that he did not have a copy of the Notice to show the court nor had he seen a copy of the Notice prior to testifying. Pappas also testified that the Notice was generated automatically by GMAC's automated billing and collection software at the time that the vehicle was voluntarily surrendered to GMAC.

Defendant then testified on her own behalf. Defendant testified that she signed the retail installment contract admitted into evidence and that she was listed as an owner of the vehicle on the certificate of title. Defendant testified that upon being served with GMAC's lawsuit, she agreed to voluntarily surrender possession of the vehicle and assisted GMAC in the recovery

thereof. Defendant testified that she did not dispute the calculation of the deficiency balance claimed by GMAC but did dispute that GMAC was entitled to collect the claimed balance. Defendant testified that she received the Deficiency Letter and stipulated to the foundation necessary for its introduction into evidence. Defendant testified that she did not receive the Notice.

Prior to closing arguments, the circuit court asked the parties to address the following issues: (1) whether GMAC was obligated, as a matter of law, to send the Notice to defendant; (2) if GMAC was so obligated, whether GMAC satisfiedf its burden of proof that it had, in fact, sent the Notice to defendant; and (3) if GMAC had not satisfied its burden of proof on this issue, what was the resulting consequence thereof.

During closing arguments, GMAC argued that defendant had conceded that a valid contract existed which defendant had breached and that defendant was not contesting the legality of the repossession of the vehicle, the commercial reasonableness of the vehicle's sale method or the damages claimed to be due to GMAC. GMAC argued that it was not obligated, as a matter of law, to send the Notice to defendant. GMAC argued that the requirement to send the Notice was codified in section 9-611 of the UCC (810 ILCS 5/9-611 (West 2002)), and that the terms of that statute were applicable only when a secured creditor resorted to "self-help" in order to recover collateral which had gone into default. GMAC argued that it did not resort to "self-help" in order to recover the vehicle at issue. Rather, GMAC had filed a lawsuit invoking replevin provisions under the Code (735 ILCS 5/19-101 *et seq.* (West 2002)), which contained no requirement to send the Notice. GMAC also argued that during the pendency of the lawsuit, defendant had

voluntarily surrendered possession of the vehicle to GMAC.

Thus, GMAC argued that there were two independent reasons why there was no obligation to send the Notice. First, the requirement to send the Notice under section 9-611 of the UCC (810 ILCS 5/9-611 (West 2002)) was inapplicable in a lawsuit brought pursuant to the Code (735 ILCS 5/19-101 *et seq.* (West 2002)). Second, there was no requirement to send the Notice where GMAC did not have to resort to "self-help" in order to recover the collateral at issue where defendant voluntarily surrendered the vehicle to GMAC.

In addition, GMAC argued that it did not matter whether GMAC was required to send the Notice because the uncontroverted testimony of Mike Pappas was that the Notice had, in fact, been sent. GMAC maintained that the fact that defendant testified that she did not receive the Notice was immaterial to the question of whether GMAC sent the Notice. Further, GMAC argued that it did not matter that GMAC was unable to produce a copy of the Notice at trial because it was not a document that was central to GMAC's claim.

Defendant argued that GMAC was required to send the Notice, whether or not GMAC was proceeding under the replevin statutes of the Code (735 ILCS 5/19-101 *et seq.*) (West 2002)) and whether or not defendant had voluntarily surrendered possession of the vehicle to GMAC. Defendant argued that GMAC could not meet its burden of proof on this issue without producing a copy of the Notice for the court's inspection. Defendant maintained that due to GMAC's failure to produce a copy of the Notice, defendant's liability for the deficiency balance claimed to be due after the sale of the vehicle was limited to the proceeds of the sale realized by GMAC, as set forth in section 9-626 of the UCC (810 ILCS 5/9-626 (West 2002)). Therefore, defendant

argued that GMAC was not entitled to any additional damages from defendant.

Both GMAC and defendant stated at trial that they were unaware of any decisions of any court of review on these issues.

The circuit court found that defendant had executed the retail installment contract and had defaulted on that contract. After being served with GMAC's complaint, defendant provided information regarding the location of the vehicle and GMAC obtained possession of the vehicle which secured defendant's obligations. The circuit court also found that the sale of the vehicle was conducted in a commercially reasonable manner and accepted GMAC's calculations of the deficiency balance resulting from the sale of the vehicle.

The circuit court held that the requirement to send the Notice set forth in section 9-611 of the UCC was applicable to the present case. The circuit court further held that without a copy of the Notice, and despite the testimony of Mike Pappas that the Notice had been automatically generated and sent to defendant, GMAC was unable to meet its burden of proof that it complied with section 9-611. Therefore, GMAC's calculation of the deficiency balance due after the sale of the vehicle was limited, as a matter of law, to the proceeds of the sale already collected by GMAC, as set forth in section 9-626 of the UCC. Accordingly, the circuit court entered judgment in favor of defendant.

On April 20, 2006, 30 days after trial, GMAC filed a motion to stay the circuit court's findings and reopen evidence. In that motion, GMAC sought to introduce a copy of the Notice which GMAC claimed was sent to defendant prior to the sale of the vehicle. GMAC argued that introduction of a copy of the notice was of the utmost importance to its case because it showed

that defendant was on notice of GMAC's intention to sell the vehicle and that GMAC had complied with section 9-611 of the UCC. GMAC also argued that the failure to introduce a copy of the Notice at trial was inadvertent, where GMAC's counsel requested the copy from GMAC but did not receive it prior to trial. GMAC further argued that introduction of a copy of the Notice would not cause defendant any prejudice where the Notice was discussed at trial.

In its response to GMAC's motion, defendant argued that the circuit court should decline to reopen the evidence and consider a copy of the Notice where GMAC was, in essence, seeking to introduce newly discovered evidence without showing, pursuant to section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2002)), that it had been diligent in trying to obtain the evidence and that the evidence was unavailable at the time of trial. Defendant also argued that GMAC's failure to forward the Notice to its counsel was merely inadvertent and to allow the introduction of a copy of the Notice would prejudice defendant.

On June 13, 2006, the circuit court denied GMAC's motion to stay the court's findings and reopen evidence. In its order, the circuit court adopted the reasoning in defendant's response to GMAC's motion. GMAC now appeals.

## II. Analysis

### A. The Judgment in Favor of Defendant

#### 1. Standard of Review

GMAC first challenges the circuit court's order granting judgment in defendant's favor. " 'The standard of review we apply when a challenge is made to a trial court's ruling following a bench trial is whether the trial court's judgment is against the manifest weight of the evidence.' "

Avenaim v. Lubecke, 347 Ill. App. 3d 855, 861 (2004), quoting Judgment Services Corp. v. Sullivan, 321 Ill. App. 3d 151, 154 (2001). A judgment is against the manifest weight of the evidence only when an opposite conclusion " 'is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " Avenaim, 347 Ill. App. 3d at 861, quoting Judgment Services Corp., 321 Ill. App. 3d at 154.

### 2. Applicability of Article 9 of the UCC

GMAC argues that the circuit court's judgment was against the manifest weight of the evidence where it erroneously applied the notice provisions under the UCC to the present case. GMAC argues that the notice requirement in section 9-611 and other provisions in Article 9 of the UCC did not apply in this case because GMAC sought an order of replevin pursuant to section 19-101 of the Code. GMAC maintains that there is no indication in section 19-101 of the Code that the legislature intended a "mutuality of obligation" between a replevin action under the Code and the "self-help repossession statutes (in which 810 ILCS 5/9-611) is a part." We disagree.

The record shows that GMAC filed a two-count complaint against defendant. Count I was entitled "Replevin" and count II was labeled "Breach of Contract" and sought damages for defendant's breach of the retail installment sales contract. Prior to the circuit court's scheduled replevin hearing, GMAC repossessed the vehicle from Birdie Moore whose address was provided by defendant. The replevin count was subsequently voluntarily dismissed with prejudice prior to trial. Defendant argues that due to this dismissal, GMAC could not have been proceeding under a cause of action for replevin and that Article 9 of the UCC applied in this case.

1-06-1858

Replevin is strictly a statutory proceeding. Gunn v. Sobucki, 216 Ill. 2d 602, 613 (2005); 735 ILCS 5/19-101 *et seq.* (West 2002). To prevail, a plaintiff must recover on the strength of his or her own title or right to immediate possession. One who has no right to possession of the property cannot maintain replevin. Gunn, 216 Ill. 2d at 613. Section 19-101 of the Code provides that "[w]henever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 ILCS 5/19-101 (West 2002). Accordingly, an action of replevin seeks possession of property which has been wrongfully detained. 735 ILCS 5/19-101, 19-104 (West 2002). If an order of replevin is issued, section 19-109 provides that "[t]he order for replevin shall require the sheriff, or other officer to whom it is directed to take the property, describing it as in the complaint, from the possession of the defendant, and deliver the same to the plaintiff unless such defendant executes a bond." 735 ILCS 5/19-109 (West 2002). Section 19-123 then provides that "[i]f the plaintiff in an action of replevin fails to prosecute the action with effect, or allows a voluntary or involuntary dismissal, or if the right of property is adjudged against the plaintiff, judgment shall be entered for a return of the property if such property has been delivered to the plaintiff." 735 ILCS 5/19-123 (West 2002).

While GMAC's complaint included a count for replevin, the vehicle was subsequently repossessed by GMAC and the circuit court did not issue an order for replevin under the Code in this case. GMAC also sought damages for breach of the retail installment sales contract and sold the vehicle, which was the collateral in this case. Section 20 of the Motor Vehicle Retail

-10-

Installment Sales Act provides that: "Unless otherwise limited by this Act, the parties shall have the rights and remedies provided in Article 9 of the Uniform Commercial Code with respect to default and disposition and redemption of collateral." 815 ILCS 375/20 (West 2002). This court has previously held that under section 20 of the Motor Vehicle Retail Installment Sales Act, buyers and sellers subject to that Act have the rights and remedies provided in article 9 of the UCC. See Boulevard Bank, N.A. v. Moore, 271 Ill. App. 3d 315, 320 (1995); see also Continental Bank of Buffalo, N.A. Grove v. Krebs, 184 Ill. App. 3d 693, 697 (1989) (the provisions of Part 5 of article 9 of the UCC govern the rights and remedies under motor vehicle security agreements). In addition, article 9 of the UCC "applies to any transaction which is intended to create a security interest in personal property, including goods, documents, instruments, general intangibles, chattel paper or accounts." Ryder v. Bank of Hickory Hills, 242 Ill. App. 3d 1042, 1045 (1993). Accordingly, we find that the circuit court properly determined that Article 9 of the UCC, which includes the section 9-611 notice requirement, applied to this case.

We also note that, contrary to GMAC's assertion, nothing in article 9 of the UCC limits its application to instances where a creditor resorts to "self-help." To the contrary, section 9-609(a) of the UCC provides that after default, a secured party "(1) may take possession of the collateral; and (2) without removal, may render equipment unusable and dispose of collateral on a debtor's premises under Section 9-610." 810 ILCS 5/9-609(a)(West 2002). Section 9-609(b) then provides that the secured party may proceed either "(1) pursuant to judicial process; or (2) without judicial process, if it proceeds without breach of the peace." 810 ILCS 5/9-609(b) (West

1-06-1858

2002). Accordingly, article 9 of the UCC is not limited to a secured party that uses "self-help" to obtain possession of the collateral.

### 3. Proof of Notice to Defendant

GMAC next contends that the circuit court's judgment was against the manifest weight of the evidence where the court found that GMAC could not show that it complied with the notice requirement set forth in section 9-611 of the UCC without producing a copy of the notice sent to defendant.

As previously discussed, article 9 of the UCC governs the foreclosure of security interests and is applicable to the instant action. In the case of defaults, section 9-610(a) of the UCC provides that a secured party "may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing" in order to satisfy the indebtedness. 810 ILCS 5/9-610(a) (West 2002). "Unless there is an agreement to the contrary, the debtor is liable for any deficiency that results from the sale. [Citation.] Absent such an agreement, the only defenses available to a debtor against a deficiency judgment are lack of reasonable notice of the sale and commercial unreasonableness of the sale." Standard Bank & Trust Co. v. Callaghan, 177 Ill. App. 3d 973, 977 (1988) (discussing Ill. Rev. Stat. 1983, ch. 26, par. 9-504 (now 810 ILCS 5/9-611(West 2002)).

Section 9-611(b) of the UCC provides that a secured party that disposes of collateral under section 9-610 "shall send" to the debtor "a reasonable authenticated notification of disposition." 810 ILCS 5/9-611(b) (West 2002). "This section does not require proof of 'actual receipt' by the debtor to satisfy the reasonable notice requirement. [Citation.]" Ryder, 242 Ill.

App. 3d at 1048. "To send a reasonable notice, the notification must be deposited in the mail with postage prepaid and properly addressed." Ryder, 242 Ill. App. 3d at 1048; 810 ILCS 5/1-201(38) (West 2002). The burden of proving compliance with the notice requirement is on the creditor. Walczak v. Onyx Acceptance Corp., 365 Ill. App. 3d 664, 680 n.2 (2006), citing First National Bank of Decatur v. Wolfe, 137 Ill. App. 3d 929, 932 (1985); A .A. Store Fixture Co. v. Kouzoukas, 87 Ill. App. 3d 631, 634 (1980).

Section 9-613 provides that the contents of a notification of disposition are sufficient if the notification: "(A) describes the debtor and the secured party; (B) describes the collateral that is the subject of the intended disposition; (C) states the method of intended disposition; (D) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and (E) states the time and place of a public disposition or the time after which any other disposition is to be made." 810 ILCS 5/9-613 (West 2002).

GMAC argues that Pappas's testimony was sufficient to show that GMAC sent the Notice to defendant and that it was not necessary for GMAC to show that defendant received the Notice in order to sustain its burden of proof under section 9-611(b). The record shows that defendant testified that the Notice was never received. Pappas testified that based upon his review of GMAC's records regarding the events in question, after recovering the vehicle GMAC sent the Notice to defendant. Pappas testified that the Notice informed defendant that GMAC had recovered possession of the vehicle due to defendant's default under the retail installment contract and would sell the vehicle at public auction on a date certain if defendant did not redeem the vehicle by making certain payments to defendant. However, Pappas testified that he did not have

a copy of the Notice to show the court nor had he seen a copy of the Notice prior to testifying.

Pappas also testified that the Notice was generated automatically by GMAC's automated billing

and collection software at the time that the vehicle was voluntarily surrendered to GMAC.

Furthermore, no copy of such notice or evidence of its contents was presented.

Based on these facts, we find that the circuit court's conclusion that GMAC failed to prove notice

was not against the manifest weight of the evidence. A. A. Store Fixture Co., 87 Ill. App. 3d at

634.

### 4. Effect of Failure to Provide Notice

GMAC next contends that the circuit court's judgment was against the manifest weight of

the evidence where the court found that GMAC's failure to provide notice acted as an absolute

bar to the entry of a deficiency judgment against defendant.

Section 9-626 explicitly states consequences that are to follow a failure to comply with the

provisions of part 6, relating to default, of the UCC. This section provides in relevant part:

> "In an action in which the amount of a deficiency or surplus is in issue, the
>
> following rules apply:
>
> ***
>
> (2) If the secured party's compliance is placed in issue, the secured
>
> party has the burden of establishing that the collection,
>
> enforcement, disposition, or acceptance was conducted in
>
> accordance with this Part.
>
> (3) Except as otherwise provided in Section 9-628, if a secured

party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this Part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:

> (A) the proceeds of the collection, enforcement, disposition, or acceptance; or

> (B) the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this Part relating to collection, enforcement, disposition, or acceptance.

(4) For purposes of paragraph (3)(B), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum." 810 ILCS 5/9-626 (West 2002).

In First Galesburg National Bank & Trust Co. v. Joannides, 103 Ill. 2d 294, 299-301 (1984), our supreme court held that the failure of a secured party to give the required prior notice of sale of collateral to the debtor under the UCC will result in a rebuttable presumption that the

amount received from the sale was equal to the amount owed by the debtor. To rebut the presumption, the secured party must prove that the sale was conducted in a commercially reasonable manner and that the amount received from the sale was less than the amount owed on the debt. First Galesburg, 103 Ill. 2d at 300-01; Walczak, 365 Ill. App. 3d at 680 n.2. As GMAC correctly notes, our supreme court held that none of the UCC's provisions provide that a lack of notice bars a deficiency judgment. The court has rejected an absolute-bar view, under which a secured creditor is precluded from bringing a deficiency action against the debtor unless the debtor was given notice of the proposed sale of collateral. First Galesburg, 103 Ill. 2d at 299-301. In the court's view, the absolute-bar rule, by barring a deficiency action regardless of whether the debtor has suffered damage from the lack of notice, provides a windfall to the debtor and arbitrarily penalizes the creditor. First Galesburg, 103 Ill. 2d at 300. Walczak, 365 Ill. App. 3d at 680-81 n.2.

In this case, the record shows that Pappas testified to the amount that the vehicle was sold for at auction, the various costs associated with the sale of the vehicle, and credits given to defendant after the sale. The parties also agreed before this court that the vehicle was sold at an auction facility which handles thousands of vehicles and there was no reason to believe that the amount received from the auction of the vehicle in this case would have been different had the notice requirement been satisfied. The circuit court determined that the sale of the vehicle was conducted in a commercially reasonable manner and accepted GMAC's calculations of the deficiency balance resulting from the sale of the vehicle. However, the court further held that GMAC was unable to meet its burden of proof that it complied with the UCC notice requirement

and GMAC's calculation of the deficiency balance due after the sale of the vehicle was limited, as a matter of law, to the proceeds of the sale already collected by GMAC. We read this as an absolute bar to a deficiency action based on GMAC's failure to comply with the notice requirement in this case. Because the circuit court applied an erroneous standard, we remand this case for the court to apply the rebuttable-presumption standard in determining the consequence of a failure of notice to the debtor, as articulated by our supreme court in First Galesburg, 103 Ill. 2d 294.

B.  GMAC'S Motion to Stay and Reopen Evidence

GMAC lastly contends that the circuit court erred in denying its motion to stay the court's findings and reopen evidence so that GMAC could introduce a copy of the Notice it claimed was sent to defendant. GMAC argues that it should have been allowed to introduce the Notice where GMAC's witness testified and was cross-examined at length regarding the Notice.

"The denial of a motion to reopen proofs is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion." Chicago Transparent Products, Inc. v. American National Bank & Trust Co. of Chicago, 337 Ill. App. 3d 931, 942 (2002). "In rendering its decision, the trial court should consider whether the moving party has provided a reasonable excuse for failing to submit the additional evidence during trial, whether granting the motion would result in surprise or unfair prejudice to the opposing party, and if the evidence is of the utmost importance to the movant's case." Dowd and Dowd, Ltd. v. Gleason, 352 Ill. App. 3d 365, 389 (2004).  "If evidence offered for the first time in a posttrial motion could have been produced at an earlier time, the court may deny its introduction into evidence." Chicago

1-06-1858

Transparent Products, 337 Ill. App. 3d at 942.

In its motion, GMAC merely alleged that upon reviewing defendant's affirmative defenses in her March 7, 2006, answer to the complaint, including defendant's statement that she did not receive the Notice, "counsel for GMAC immediately requested that GMAC transmit a copy of the notice to counsel for use at trial. Unfortunately, a copy of said notice was not received by GMAC's counsel prior to the trial [on March 21, 2006]." GMAC does not allege that the copy of the Notice could not have been produced at trial and has not set forth a reasonable excuse for failing to submit the evidence at trial. We therefore find that the circuit court did not abuse its discretion in denying the motion to reopen proofs in this case.

GMAC, nonetheless, cites A-Tech Computer Services, Inc. v. Soo Hoo, 254 Ill. App. 3d 392 (1993), and Dunahee v. Chenoa Welding & Fabrication, Inc., 273 Ill. App. 3d 201 (1995), in support of its contention that the circuit court should have reopened the evidence to allow GMAC to introduce a copy of the Notice. However, we find GMAC's reliance on these cases unavailing.

In A-Tech Computer Services, this court found no abuse of discretion where the circuit court reopened evidence after the plaintiff rested at a preliminary injunction hearing. The purpose of reopening the evidence was to pare down and clarify evidence already before the circuit court concerning a list of clients of the former employee. In that case, the former employee had already stipulated to the evidence of the original list of clients, had not objected to the admission of the subsequent, pared down list, and had the opportunity to cross-examine the witness as to any client names on both lists. A-Tech Computer Services, 254 Ill. App. 3d at 402-03. Unlike A-Tech Computer Services, the copy of the Notice in this case was not already before the circuit court

-18-

and GMAC was not seeking to merely clarify such evidence. In addition, GMAC was seeking to reopen the evidence not during a hearing, but after judgment was already entered in this case.

In Dunahee, this court found that the circuit court abused its discretion by refusing to reopen the case to receive evidence before the judgment was rendered; where the plaintiff's failure to introduce the evidence was because of inadvertence; where the admission of the evidence would not result in any prejudice or unfair surprise; and where the new evidence was of the utmost importance to the plaintiff's case. Dunahee, 273 Ill. App. 3d 210-11. Unlike Dunahee, GMAC sought to introduce the copy of the Notice after judgment was rendered in this case. GMAC also failed to offer a reasonable excuse for its failure to introduce the copy of the Notice and did not allege that the Notice was new evidence that was not available at trial.

GMAC also argues that the circuit court erred in denying its motion to stay the court's findings and reopen evidence by adopting defendant's reasoning that GMAC's motion was essentially a motion to reconsider judgment under section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2002)).

Section 2-1203 of the Code provides that "[i]n all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203 (West 2002). The decision to grant or deny a motion for reconsideration lies within the discretion of the circuit court and will not be reversed absent an abuse of that discretion. North River Insurance Co. v. Grinnell Mutual Reinsurance, Co., 369 Ill. App. 3d 563 (2006). The intended

purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. North River Insurance, 369 Ill. App. 3d 563. "Newly discovered" evidence is evidence that was not available prior to the hearing and trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. North River Insurance, 369 Ill. App. 3d at 572. Here, GMAC did not bring any newly discovered evidence to the circuit court's attention. It had been aware of defendant's affirmative defense that she did not receive the Notice since at least March 7, 2006, and failed to obtain a copy of the Notice by the time the trial began on March 21, 2006. Further, GMAC did not cite to any changes in the law or errors in the court's previous application of the law in its motion. Therefore, we find that the circuit court's denial of GMAC's motion pursuant to section 2-1203 of the Code was not an abuse of discretion.

### III. Conclusion

For the above reasons, we affirm the circuit court's application of the notice provisions under the UCC to the present case and the circuit court's determination that GMAC failed to prove notice in this case. We reverse the circuit court's judgment and remand for the court to apply the rebuttable-presumption standard in this case. We also affirm the circuit court's denial of GMAC's motion to stay the court's findings and reopen evidence.

Affirmed in part and reversed in part; cause remanded.

CAMPBELL and MURPHY, JJ., concur.

1-06-1858