CONTINENTAL BANK OF BUFFALO GROVE, N.A., Plaintiff-Appellee, v. ROBERT T. KREBS *et al.*, Defendants-Appellants.

Second District   No. 2—88—1029

Opinion filed June 21, 1989.

Leonard O. Abrams and Murray Westler, both of Chicago, for appellants.

Alan E. Richards, of Richards, Ralph, Eiden, Eckert & O'Donnell, Chartered, of Vernon Hills, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Sun Bank/South Florida, appeals from an order of the circuit court of Lake County which granted summary judgment in favor of plaintiff, Continental Bank of Buffalo Grove, and denied defendant's own motion for summary judgment. On appeal, defendant contends that (1) the trial court erred in applying Florida law to determine whether plaintiff perfected a security interest in a vehicle, and (2) due to plaintiff's failure to perfect a security interest in the vehicle, defendant was entitled to the proceeds from the sale of that vehicle.

We briefly summarize the pertinent facts which are uncontroverted in the pleadings and affidavits. On September 28, 1985, Robert T. Krebs, an Illinois resident, signed a security agreement in which plaintiff agreed to lend Krebs $45,000 for the purchase of a used 1985 Mercedes Benz 500 SEL automobile. On October 3, 1985, Krebs executed a secured promissory note in the amount of $53,000 representing the $45,000 automobile loan and the renewal of an $8,000 note. As collateral for the October 3 promissory note Krebs listed the Mercedes along with four other cars and two trucks. Sometime thereafter, Krebs purchased the Mercedes with $41,769.25 from the funds lent by plaintiff.

Subsequent to the execution of the October 3 promissory note, Krebs advised plaintiff that he desired to have the title to the Mercedes held in the name of Multi-Fastener, a company wholly owned by him. Accordingly, on December 3, 1985, plaintiff and Multi-Fastener executed a security agreement granting plaintiff a security interest in the Mercedes to secure repayment of the October 3 note. Plaintiff then gave the documentation necessary to obtain title to Krebs, and on December 13, 1985, the Illinois Secretary of State issued a certificate of title for the Mercedes in the name of Multi-Fastener. The certificate of title did not list plaintiff as a lienholder.

On January 31, 1986, Krebs executed a promissory note in the amount of $26,000 in favor of defendant, a Florida bank. At this point, Krebs surrendered the Illinois certificate of title to defendant. Multi-Fastener signed a security agreement with defendant in which Multi-Fastener pledged the Mercedes as collateral for the January 31 note and for other existing loans from defendant to Krebs.

On April 18, 1986, after Krebs defaulted on his October 3 promissory note with plaintiff, plaintiff repossessed the Mercedes in Illinois. On May 29, 1986, plaintiff applied to the Illinois Secretary of State for a certificate of title to the Mercedes and filed an affidavit of repossession. On June 18, 1986, the Illinois Secretary of State issued a

certificate of title for the Mercedes in plaintiff's name. On December 12, 1986, plaintiff sold the Mercedes for $31,000.

On June 26, 1986, defendant applied to the Florida Secretary of State for a certificate of title to the Mercedes. On July 14, 1986, the Florida Secretary of State issued a certificate of title in Multi-Fastener's name which listed defendant as the first and only lienholder.

On November 6, 1986, plaintiff brought suit against Krebs and Multi-Fastener on the October 3 promissory note and several other promissory notes. Plaintiff obtained a judgment against Krebs and Multi-Fastener in the amount of $110,008.66 on January 26, 1987. On May 21, 1987, plaintiff amended its complaint, adding a declaratory judgment count against defendant seeking a determination of its rights in the proceeds from the sale of the Mercedes.

Cross-motions for summary judgment were filed, and the circuit court determined that pursuant to section 9—103(2)(b) of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1987, ch. 26, par. 9—103(2)(b)), Florida law was controlling in deciding which party had a superior security interest in the Mercedes. The trial court concluded that under Florida law, plaintiff had a superior interest in the proceeds from the sale of the Mercedes and granted plaintiff's motion for summary judgment, denying defendant's motion.

On appeal, defendant contends that the trial court erred when it applied Florida law to determine the rights of the parties in the Mercedes. Defendant maintains that Illinois law should have been applied to determine the parties' rights because Krebs and Multi-Fastener resided in Illinois, the Mercedes was located in Illinois, the Mercedes was repossessed in Illinois, and plaintiff was an Illinois bank. Defendant asserts that under sections 3—202 and 3—203 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, pars. 3—202, 3—203), plaintiff failed to perfect its lien on the Mercedes. Defendant concludes that, under Illinois law, it had a right to rely on the clear Illinois certificate of title when it extended credit and took a security interest in the Mercedes Benz and therefore had a superior interest in the vehicle. We note that the cases defendant relies on for this final proposition are inapplicable as they involve disputes between secured parties and subsequent purchasers, not between holders of conflicting security interests as is the case here.

Even were we to find that defendant's security interest had priority over plaintiff's, we do not believe that under either Illinois or Florida law defendant was entitled to share in the proceeds collected by plaintiff when it enforced its security interest. We note that in both Florida and Illinois, while perfection of a security interest is governed

by certificate of title provisions, the UCC is applicable in other respects. (Ill. Rev. Stat. 1987, ch. 26, par. 9—302(3); Fla. Stat. Ann. §679.302(3) (West Supp. 1989).) The pertinent provisions of the UCC are substantially identical in Illinois and Florida.

Defendant has focused its argument on appeal on choice of law and priority questions, assuming that if it had a prior security interest in the Mercedes Benz, it has rights in the funds recovered by plaintiff upon plaintiff's enforcement of its allegedly junior security interest. While plaintiff has not addressed this point, we nonetheless decline to adopt defendant's assumption.

■ Our review of the case law suggests that, typically, questions of priority among security interests arise in the context of actions brought prior to disposition of the collateral under either security interest. (See, *e.g.*, *Decatur Production Credit Association v. Murphy* (1983), 119 Ill. App. 3d 277, 456 N.E.2d 267; *Central National Bank v. Worden-Martin, Inc.* (1980), 90 Ill. App. 3d 601, 413 N.E.2d 539.) The instant case, however, having arisen following the sale of the collateral by one of the secured parties, is governed by section 9—504 of the UCC (Ill. Rev. Stat. 1987, ch. 26, par. 9—504), which sets forth the rules for distribution of the proceeds of such a sale. "[N]otwithstanding the regulation of security interests in motor vehicles by the Vehicle Code (Ill. Rev. Stat. ch. 95½, §§3—201 through 3—210), the provisions of Part 5 of Article 9 govern the rights and remedies of both debtors and creditors upon default under motor vehicle security agreements." Ill. Ann. Stat., ch. 26, par. 9—501, Code Comment, at 318 (Smith-Hurd 1974).

■ We note that section 9—503 of the UCC provides that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." (Ill. Rev. Stat. 1987, ch. 26, par. 9—503.) Section 9—504 of the UCC provides in part that "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral." (Ill. Rev. Stat. 1987, ch. 26, par. 9—504(1).) Neither provision is limited by its language to the senior secured party. Plaintiff held a security interest which, even if unperfected as defendant asserts, was valid and enforceable against the debtor (see *In re Estate of Yealick* (1979), 69 Ill. App. 3d 353, 387 N.E.2d 399), and plaintiff was within its rights in repossessing and selling the Mercedes Benz.

Section 9—504 further provides:

"The proceeds of disposition shall be applied in the order following to

(a) the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent

provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;

    (b) the satisfaction of indebtedness secured by the security interest under which the disposition is made;

    (c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand." (Ill. Rev. Stat. 1987, ch. 26, par. 9—504(1).)

Nothing in this section either requires or authorizes application of the proceeds in satisfaction of a senior security interest. (9 W. Hawkland, Uniform Commercial Code Series §9—504:03, at 582 (1986).) The senior secured party retains his security interest, however, as the UCC only provides that disposition of the collateral after default discharges the security interest under which the disposition is made and any subordinate liens or security interests and a purchaser normally takes subject to the prior security interest. (Ill. Rev. Stat. 1987, ch. 26, par. 9—504; 9 W. Hawkland, Uniform Commercial Code Series §9—504:03, at 582 (1986).) Thus, the UCC provides no right in a senior secured party to the proceeds from the disposition of the collateral by the junior party under the circumstances here. We are not suggesting that, under the facts of this case, defendant has a right of action against the purchaser as the facts of the sale are not in this record, and we have merely assumed for purposes of argument that defendant's security interest had priority. No other theory, except priority, has been advanced by defendant which might entitle it to relief against plaintiff. We, therefore, conclude that under either Florida or Illinois law defendant has no right to the proceeds from plaintiff's sale of the Mercedes Benz.

    ■ Defendant further argues that this case is governed by the principle that as between two innocent parties, one of whom must sustain a loss occasioned by the wrongdoing of a third party, the loss is to be sustained by the party who could have prevented the loss and contends that plaintiff could have prevented any loss here by perfecting its security interest in Illinois. We need not resort to this general principle as the comprehensive provisions of article 9 of the UCC govern the rights of the parties in the instant case.

    ●4 Summary judgment is appropriate where there is no genuine

issue with respect to any material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112, 514 N.E.2d 188.) Because this case involved no questions of material fact and plaintiff was entitled to judgment as a matter of law, we affirm the trial court's order granting plaintiff's motion for summary judgment.

The judgment of the circuit court is affirmed.

Affirmed.

McLAREN and NASH, JJ., concur.